## Workmen's Compensation Board of Kentucky v. Abbott, et al.

(Decided December 18, 1925.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Master and Servant—Compensation Board May Appeal to Supreme Court from Judgment of Circuit Court.—In view of Kentucky Statutes, section 4936, providing for appeal in compensation cases from circuit court to Supreme Court, and in view of section 4935, providing for appeal from decision of Workmen's Compensation Board to circuit court, giving board right to appear in circuit court, board has right to be heard in circuit court, and appeal from any judgment in all cases where amount involved is appealable to Supreme Court.

2. Master and Servant—Circuit Court Without Jurisdiction to Enter Judgment on Compromise Without Consent of Compensation Board. —Circuit court, on appeal to it in compensation cases under Kentucky Statutes, section 4935, has not jurisdiction to enter judgment based on compromise between parties without consent of Workmen's Compensation Board.

3.  Constitutional Law—Constitutional Protection of Right to Contract Extends Only to Legal Contracts.—Constitutional protection of right to contract is confined to legal contracts and may not be invoked to guarantee right to make or enter into illegal and properly forbidden contracts.

4.  Constitutional Law—"Police Power" Defined.—"Police power" generally is right of legislature, or on proper occasion right of courts, to regulate, deal with, curtail, or even prohibit certain engagements, conduct, or acts tending to suppress or injuriously affect movements, measures, or schemes in furtherance of permissible and authorized public policy.

5.  Constitutional Law—Right of Legislature to Declare what is Proper Public Policy in Respect to Police Power Held Limited Only by Prohibition Against Arbitrary Action.—Right of legislature to declare what is proper public policy so as to regulate exercise of police power is limited only by consideration that its action may not be arbitrary but must be rested on some tangible and reasonably clear public purpose to be served, and which has a reasonably substantial tendency to further interests of public welfare.

6.  Constitutional Law—"Public Policy" Defined.—"Public policy" regulating exercise of police power is principle which declares that no one can lawfully do that which has tendency to be injurious to public welfare.

7.  Master and Servant—Workmen's Compensation Act Authorized Under Police Power.—Workmen's Compensation Act is authorized under police power as furthering sound public policy.

8.  Constitutional Law—Master and Servant—Law Prohibiting Compromise Without Consent of Compensation Board Held Constitutional.—Legislature has power to regulate compromise of payment of compensation under Workmen's Compensation Act and to prohibit such agreement unless entered into in accordance with terms of act which requires consent of compensation board, notwithstanding Bill of Rights, sections 1 and 2, relating to freedom to contract, and of due process clause of state and federal Constitutions (Constitution Kentucky, section 14; Constitution U. S. Amendment 14).

9.  Constitutional Law—Legislature May Prohibit Assignment of Claims for Workmen's Compensation.—Legislature has power to prohibit assignment of claims for compensation under Workmen's Compensation Act, which it did in Kentucky Statutes, section 4913.

10. Master and Servant—Compromise Can Only Be Entered into with Approval of Workmen's Compensation Board.—Kentucky Statutes, section 4889, prohibiting contract to relieve employer of any obligation created by Workmen's Compensation Act, except as therein provided, does not refer to withdrawing provision, section 4959, but refers to obligation about which there were provided conditions under which permissible agreement might be made under sections 4907 and 4931, both of which require consent and approval of compensation board, and any agreement between employer and

employe to compromise liability for compensation, to be legal, must
be approved by compensation board.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K.
BYERS, Assistant Attorney General, for appellant.

SELLIGMAN & SELLIGMAN and NORTON L. GOLDSMITH for
appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Sustaining motion for appeal and reversing the judgment.

The appellee, L. V. Abbott, was engaged in the business of an architect, engineer and builder in the city of Lousville and was subject to the provisions of our statute known as the "Workmen's Compensation Act" (hereafter referred to as "the act.") He had in his employ the appellee, Thomas J. McGuire, who was 28 years old and otherwise *sui juris*. Both Abbott and McGuire had accepted the provisions of the act, and the latter sustained an injury covered by it. He made application to the compensation board and it rendered an award in his favor for certain allowable items, and in addition found that he had sustained 10 per cent permanent partial disability for which he was compensated at the rate of $1.20 per week for 335 weeks. After crediting the award with payments that had been theretofore made by the employer, the total amount of it was less than $500.00 and more than $200.00. The employer, who disputed the correctness of the award in making any allowance for any per cent of permanent disability, appealed the case to the Jefferson circuit court in the manner provided by the act, and to which appeal the board, as the act requires, was made a party. While the appeal was pending Abbott and McGuire reached an agreement, without consulting or in any manner obtaining the consent of the board, whereby, in consideration of the payment by the employer to the employee of $457.00, the award and all claims arising under the act were compromised and settled. That agreement was reduced to writing and signed by both Abbott and McGuire, and was filed in the circuit court in which the appeal was pending, accompanied by a motion that the court render judgment in accordance with the agreement, to which the board objected by a special demurrer to the jurisdiction of the court to render any such judgment; but the court ruled against it, to which it excepted. The motion made by appellees was

sustained and judgment rendered in accordance with the agreement, to reverse which the board has filed a transcript of the record in this court with a motion for an appeal.

Before taking up the questions argued on the merits of the case we will first briefly consider a question of practice raised by an *amicus curiae* brief filed in the case by permission of this court. It is, that the board has no right or authority to prosecute an appeal in this class of cases from the circuit court to this one. Involved in that question is the further one as to the extent of the board's interest in the matters involved, *i. e.,* whether under the act it is only a mere nominal party to the proceedings on appeal either to the circuit or to this court; or whether it has, as the representative of the public, a substantial interest beyond that of a mere nominal party, and which question will be hereinafter answered to the effect that it is more than a mere nominal party. Notwithstanding that fact, however, it, perhaps, would have been competent for the legislature to deny it the right of appeal to this court and to have conferred it alone on the employer and the employee; but the fact that the board is more than a nominal party and represents some substantial interests of the public in the due and proper administration of the act (as hereinafter shown) is persuasive that the legislature did not intend to withhold from it the right of appeal so that it might protect that interest in this court to which an appeal may be taken; and, therefore, such right should not be denied, unless the act does so in clear and explicit terms. The provisions for an appeal to the *circuit* court are contained in section 52 of the act, now section 4935 of our statutes, and, of course, the board could scarcely be an appellant to the circuit court, since the appeal is from its award, which, however, is untrue with reference to the judgment of the circuit court on review of the award. Therefore, we do not attribute any particular significance to the word "party" in that section with reference to who may appeal from the award of the board to the circuit court. Section 53 of the act, now section 4936 of our statutes, makes provisions for an appeal to this court from the judgment of the circuit court and it is therein provided that the scope of this court's review "shall include all matters herein made the subject of review by the circuit court and also errors of law arising in the circuit court," &c. It is then further

provided that ''The procedure as to an appeal to the Court of Appeals shall be the same as in civil actions, so far as the same may be applicable to and not in conflict with the provisions of this act, except as follows.'' There is then prescribed what evidence shall be brought to this court and the method by which it may be done, as well as the duty of ''the appellant'' in the premises, after which certain provisions are made as to the duties of the circuit clerk upon direction of ''the parties'' with reference to the transmission of the record to this court, as well as what it should contain. The section, *supra*, providing for an appeal to the circuit court says, *inter alia*, ''The board and each party shall have the right to appear in such review proceedings,'' and the right to appear carries with it the further one to be heard, which latter right is not usually accorded to a mere *nominal* party. We, therefore, hold that it was the purpose of the act to give the board, which must be summoned on appeal to the circuit court, the right to be heard in that court and the section providing for an appeal to this court, as we have seen, vests it with the right to review the same matters that were reviewed by the circuit court, and it would seem naturally to follow that if the board had the right to be heard in the review by the circuit court, it would likewise have the same right in this court. We, therefore, hold that it is competent for the board to appeal to this court from any judgment rendered by the circuit court in all cases where the amount involved is appealable to this court.

Coming now to the merits of the case, it first is insisted by appellant that the circuit court was without jurisdiction to enter a judgment for a fixed sum, as is done therein in all actions seeking a money judgment against the defendant, whether it was based upon an agreement or not, and which contention is botttomed upon a construction placed upon section 52 *supra*, of the act, prescribing the duties of the circuit court on such petitions for review. It is argued, and which seems to be true, that nothing therein contained, either expressly or impliedly, confers such jurisdiction on the circuit court in such appeals from the award of the board; and, that being true, it is then argued that, since the act itself creates a special remedy for newly created rights as well as prior ones belonging to the same class, it is competent for the legislature in prescribing the right of appeal to limit the authority or jurisdiction of the appellate court.

There seems to be sound reasons for that argument, since it appears from the provisions of the act that the hearing in the circuit court is not a *de novo* proceeding, but only a reviewing one and its judgment is expressly confined to a determination of four specifically named questions, neither of which involve the right to enter a judgment for a fixed lump sum.

If, however, it was the intention of the act, manifested either by its express terms or by necessary implication, that the employer and employee should not be allowed to enter into an agreed settlement of claims arising under the act, except upon certain imposed conditions, or to commute an award made by the board after due submission to it except upon the same or other imposed conditions, then any such agreement or commuting would violate the provisions of the act and thereby be unenforceable; provided it was competent for the legislature to so prescribe, and in determining those questions, we will first take up and consider the last mentioned one.

It is vigorously contended that if the Compensation Act, either by its express terms or necessary implication, prohibits the settlements hereinbefore referred to, such prohibitions violate sections 1 and 2 of our Bill of Rights by denying the freedom of the parties *sui juris* to contract, and thereby also violates the "due process clause" of both the state and federal constitutions in that the property right of contract belonging to every *sui juris* citizen is illegally withheld. In considering that objection it should be steadfastly remembered that the right to contract is necessarily limited and confined to *legal* contracts and the provisions of both the federal and state constitutions relied on may not be invoked to guarantee the supposed right of one to make or enter into *illegal* and properly forbidden contracts, and which modification is conceded by learned counsel for appellees, and they readily assent to the proposition that it is lawful for the legislature to prohibit any contract against good morals, or which might be greatly detrimental to the public welfare, and others for which there may be a substantial ground under the police power. But they contend that when the legislature attempted to prohibit the contracts here involved, if it did do so, there was no substantial basis for the prohibition and it was nothing short of an arbitrary act on the part of the legislature and, therefore, violative of the constitutional provisions, both federal and state, relied on, which presents squarely for con-

sideration the object and purpose of the act, and whether they were such as to be a proper exercise of the police power? If the affirmative is true, then the legislature had the authority herein denied to it by appellees.

It is not our purpose to enter into an extended discussion of the limits and scope of the governmental doctrine universally designated as "the police power," since no court, nor any text writer, has yet been able to place precise limits to it.    It is sufficient to say that, generally, it is the right on the part of the legislature, or on proper occasions on the part of the courts, to regulate, deal with, curtail, or even prohibit certain engagements, conduct, or acts tending to suppress or injuriously affect movements, measures or schemes in furtherance of a permissible and authorized public policy.    The source of such a public policy as that the matters dealt with may be regulated under the police power, is primarily with the legislature, though courts "Are not required to look exclusively to statutory enactments in determining questions of public policy."    6 R. C. L. 709.    The right of the legislature to declare what is a proper public policy, so as to authorize its being dealt with under the police power, seems to be limited only by the consideration that its action in the matter may not be arbitrary, but must be rested upon some tangible and reasonably clear public purpose to be served, and which has a reasonably substantial tendency to further the interest of the public welfare.    Lord Brougham defined public policy "As the principle which declares that no one can lawfully do that which has a tendency to be injurious to the public welfare."    It is also variable, so as that which is "the very reverse of that which is the public policy at one time may become public policy at another; hence no fixed rules can be given by which to determine what is public policy."    6 R. C. L. 708; 9 Cyc. 483; Greene v. Caldwell, 170 Ky. 571, and Potter v. Dark Tobacco Growers' Cooperative Association, 201 Ky. 441.    We could cite pages of reported opinions as well as text writers, substantiating the above statements concerning what is included in the principle known as "public policy," but it is useless to do so, since there is nothing anywhere to be found to the contrary.

The next question, therefore, is, whether compensation acts, which are all of comparatively recent origin, are authorized under the legislative police power so as to bring them within the principle of furthering a sound

public policy? What we said in the Greene case, *supra,*
as well as in the prior one of Kentucky State Journal
Company v. Workmen's Compensation Board, 161 Ky.
562 would seem to settle that question in the affirma-
tive. But since the rendition of the Greene opinion,
in which our present Compensation Act was upheld as
constitutional, we have had before us a number of other
cases arising under it, and in many of them it was ex-
pressly held that the act was a valid exercise of the police
power and was in furtherance of a wholesome public
policy. One of the many cases in which it was so held
in Hollenbach v. Hollenbach, 181 Ky. 262, and such
is the universal holding in all the jurisdictions where
such a statute has been enacted. Briefly stated, the
reasons for such conclusion are: That the growth of the
country had become such, and its industrial enterprises
had so increased that the number of employes so engaged
became so numerous as to form a very large per cent
of the entire population. With the increase of machinery
and other dangerous agencies employed in the prosecu-
tion of such industrial enterprises, such as dynamite and
other explosives, electricity and other dangerous ones, a
great number of accidents to employees occurred daily,
and by reason thereof the public lost the producing power
of the injured or killed employee and in many instances
the community was also burdened with the task of,
not only caring for the injured servant if only disabled
and not killed, but likewise similarly burdened with the
duty to provide and care for his dependent, whether he
was disabled or killed. Prior to the passage of the act the
only remedy that the law afforded by which any sort of
compensation for such losses might be obtained was
through an ordinary action against the employer for the
recovery of damages, and no such action could be sus-
tained except where the master was negligent and the
servant was not. If there was no negligence of the mas-
ter, or if there was negligence by the servant the destruc-
tion of productive power to the public as well as the bur-
den, *supra,* on the community was a total loss to society
without any means of recompense. To remedy the situa-
tion and as a result of thoughtful, painstaking and hu-
mane considerations the general devised and regulated
plan of remuneration contained in compensation acts was
substituted for the defective and insufficient remedy
theretofore existing, and a means was provided whereby
compensation could be had for every accident coming

within the provisions of the act, and wherein the employee would not only be protected from delays and the extravagance of attorneys' fees incident to the former remedy by suit, but he and his dependents would receive *regulated* compensation payable at stated periods so as to most effectually carry out the purposes of the act in providing periodical payments to meet the continued necessities of the injured employee and his dependents. We, therefore, see that the public policy behind the act is as clearly well defined as that behind statutes limiting the hours of service per day, those regulating the paying of seamen's wages, as well as the wages of employees engaged in mining operations and other similar statutes, both federal and state, all of which have been upheld as constitutional.

Without further elaboration it is our conclusion that the public policy to be served by the Compensation Act was such as to authorize the legislature to regulate the character of contract here involved and to prohibit it, unless entered into according to the regulatory terms of the act, which was admittedly not done in this case, since the consent of the board was not obtained. 28 R. C. L., par. 36, directly dealing with the public policy nature of workmen's compensation acts, and Holden v. Hardy, 169 U. S. 366 (dealing with the act of Congress upholding a statute prescribing an eight-hour day for laborers in certain industries and prohibiting contracts for greater number of hours), and Chicago, Burlington and Quincy Railway Company v. McGuire, 219 U. S. 570. In the Holden case the Supreme Court said: "This right of contract, however, is itself subject to certain limitations which the state may lawfully impose in the exercise of its police powers. . . . But the fact that both parties are of full age and competent to contract does not necessarily deprive the state of the power to interfere where the parties do not stand upon an equality, or where the public health demands that one party to the contract shall be protected against himself. The state still retains an interest in his welfare, however reckless he may be." Many other cases of the same tenor dealing with similar statutes enacted in furtherance of a public policy might be cited, but the proposition is so well settled that we deem it unnecessary to lengthen this opinion by further discussion. It, however, might be suggested at this point that our Compensation Act as well as most if not all of those of other states contains prohibitions against assignments of com-

pensation claims. The section in our statutes so enacting is 32 and 4913 of the present edition of Carroll's Statutes, saying: "No claim for compensation under this act shall be assignable, and all compensation and claims therefor shall be exempt from all claims of creditors." Courts of other states having such statutes, and in which are similar provisions, uphold them as not invading the constitutional right to contract. In the case of Macklin v. Detroit-Timkin Axle Company, 187 Mich. 8, the section forbidding assignments of claims for compensation, together with the entire compensation act of Michigan was before the court, and in upholding the validity of the section prohibiting assignments and also other attacked sections of the act, the court said that they were, "Germane to the purpose of the act, and in the light of conditions previously existing in litigation over personal injuries to workmen, of which courts of last resort have taken judicial notice in construing workmen's compensation acts, are beneficial and appropriate, if not essential, to an efficient administration of the law. . . . The policy, importance, and propriety of this legislation, in its general plan and purpose, are not open to question, and we do not find it subject to the constitutional objections urged in this record," which was the same as we have here. See also Honnold on Workmen's Compensation, volume 1, pages 67 and 685; Conner on the same subject, page 144-145, and Dosker on our Workmen's Compensation Act, pages 195-196.

If it is competent, as we hold it is, for the legislature to provide against the assignment of such claims, it seems to us to necessarily follow that it would also be competent to deny the right to settle the claim, or the award after it was made, in a manner different from the mode provided by the act itself, since, after all, the settlement of a claim most generally involves an assignment or a relinquishment of a part of it as well as the payment of what is received *differently* from that provided by the act, and in such a manner as would be calculated to destroy the purpose of compensation payments in the regulated or distributive manner provided by the act. It remains to be determined whether such a prohibition is contained in our act, either expressly or by necessary implication.

Learned counsel for appellant contends that such settlement contracts, without the approval of the board, are inhibited by section 8a of the act, now section 4889 of

our present statutes, saying: "No contract or agreement, written or implied, no rule, regulation or other device, shall in any manner operate to relieve any employer in whole or in part of any obligation created by this act, except as herein provided;" while counsel for appellees argue that the quoted provision has no reference to accidents already sustained, but applies only to those which might happen in the future, and in support of that contention the case of Jenkins v. Texas Employers' Insurance Association, 211 S. W. 349, is relied on. That court had under consideration the Texas Compensation Act of 1920, one section of which said: "No agreement by any employee to waive his rights to compensation under this act shall be valid," and the court held that it applied only to agreements made prior to the injury and did not affect the right to compromise or settle a present existing compensation claim; and that, since another section of the Texas statute, as construed by the court, permitted such compromise agreements and settlements without the consent of the board the settlement involved in that case was upheld. We have no such provision as to settlement of present existing claims without the consent of the board in our statute, and the only possible application that the Texas case could have here is with reference to the meaning of its quoted provision, which it is claimed corresponds to section 8a, *supra,* of our act and section 4889, *supra,* of the statutes. Clearly, the above inserted section of the Texas statute could scarcely have been construed differently from the one given it by the Texas court. But our supposd corresponding section (8a) is much broader. The contract, agreement, rule, regulation or other device prohibited by it are those relating to relieving, "Any employer in whole or in part of any obligation created by this act," which is broad enough to include, not only the obligation to submit to the board *all* claims both future and present for compensation, but also all obligations which the latter may thereafter determine against him. Not only so, but such agreements, rules, regulations, etc., may be valid if they are entered into "as herein provided;" which means that the subject matter of the prohibited agreements, etc., were such as the statute somewhere provided for. There is no provision in it whereby future claims for compensation under it may be waived by the employee, except his renouncing the acceptance of the act as is provided for

by its section 76, now section 4959 of our present statutes, but which if done would not affect "any injury sustained less than one week" after taking the necessary steps to effectuate such withdrawal. The provision in section 8a, that the agreements therein forbidden could only be entered "except as herein provided," could not possibly refer to the withdrawing section, and, necessarily, meant and referred to an obligation about which there were "herein provided" conditions under which such a permissible agreement might be made, some of which relate to settlements of claims before an award, and the commutation of awards after they are rendered, the first of which is provided for by section 48 of the act, now section 4941 of our statutes, and the second one by section 26 of the act, now section 4907 of our statutes; but both of them must be made with the consent and approval of the board.

The last section referred to deals exclusively with lump sum payments of awards theretofore rendered, and there is nothing in it to indicate that the employer and employee may enter into such an arrangement *inter partes* without the approval or consent of the board. On the contrary, it is therein expressly provided that such commutation can not be made until after payments of compensation have been made for not less than six months, and then only by an application to the board as therein prescribed and the board itself is not permitted to approve any lump sum settlement below the discount therein specified. We have carefully read the cases of Odrowski v. Swift & Co., 162 Pac. 268, 99 Kan. 163, 631; Leach v. Mason Valley Mines Company (Nev.), 1916, 161 Pac. 513; Duhrkopf v. Bennett, 187 N. W. 813; Kuhn v. Pennsylvania Railroad Company, 113 Atl. 672; Dotson v. Procter & Gamble, 169 Pac. 1136, 102 Kans 248, and Jenkins v. Texas Employers' Ins. Asso., 211 S. W. 349, and find that each of them does not affect the question here involved. In some of them a different question was presented, while in others a different statute was under consideration and was construed to permit such settlements. We have neither been cited to, nor have we been able to find, any case holding that it was competent for the employer and employee to settle between themselves the claim or award where the act either expressly or by necessary implication denied the right or conditioned it and the condition was not observed.

The case of International Coal and Mine Company v. Nicholas, 293 Ill. 524, 10 A. L. R. 1010, had before it the precise question presented here. Section 23 of the Illinois act said: "No employee, personal representative, or beneficiary shall have power to waive any of the provisions of this act in regard to the amount of compensation which may be payable to such employee, personal representative or beneficiary hereunder, except after approval by the industrial board." The court held, not only that the section applied to accidents after they had occurred (which supports our conclusions, *supra*, as to the construction of our section 8a), but also held that an agreement to accept a lump sum in settlement of an award without the approval of the industrial board, as provided in the above quoted section of the act of that state, was invalid. The opinion further said that such lump sum settlement could be effected only in the manner provided for by section 9 of the Illinois act, wherein it was required that they should be petitioned for and approved by the industrial commission, just as is required by the provisions of section 4907 of our statute. It would indeed be elucidating to incorporate all of the unanswerable reasons of that court for the position it assumes in its opinion, but to do so would unnecessarily lengthen this already too long opinion, and we will content ourselves by taking therefrom an extract from a prior opinion of the same court in the case of H. G. Goelitz Company v. Industrial Board, 278 Ill. 164, reading: "The fundamental basis of workmen's compensation laws is that there is a large element of public interest in accidents occurring from modern industrial conditions, and that the economic loss caused by such accidents should not necessarily rest upon the public, but that the industry in which an accident occurred shall pay, in the first instance, for the accident. Harper, Workmen's Comp., section 5. 'That lump sum payments, with proper safeguards, should be permitted, is obvious, because on the part of the employer it may become necessary for him to terminate all his obligations to his injured workmen and others, and on the part of the employee and his dependents circumstances may arise when to deny such a lump sum settlement would result in great hardships and distress, or entire loss of the compensation. On the other hand, the state is concerned in preventing dissipation of the money paid, and an early recourse to

that charitable aid which systematic compensation aims to avoid."

All the court therein said meets with our approval and which we are convinced is in perfect harmony with judicial sentiment throughout the country with reference to the subject involved. The board then represents the public in compensation adjustments, with the imposed duty of safeguarding the purpose and intent of the act.

But it is said, that this court in a ruling without an opinion, in the case of Render Coal Company v. Harris, made January 27th, 1925, in effect held contrary to what we have above expressed. In that case an award had been rendered in favor of appellee as a dependent of her deceased husband, who was killed while serving the appellant, Render Coal Company, and it was claimed by the widow that her husband inhaled gas or foul air which produced his death, and which she claimed was compensable under our Compensation Act. The award amounted approximately to $4,750. The employer appealed to the circuit court and the award was affirmed and it prosecuted an appeal to this court wherein the board and the widow were appellees. After the appeal was perfected in this court the widow became apprehensive as to whether her husband's death was produced by a cause that was compensable under our act, in view of our prior decisions in the cases of Jellico Coal Co. v. Adkins, 197, Ky. 684, and Elkhorn Coal Company v. Kerr 203 Ky. 804, in which we held that the inhalation by the servant of foul air was not such an accident as was compensable under our act. She, therefore, agreed with the employer to accept in full settlement of the claim the cash sum of $3,324.00, and appellant, the employer, then moved this court to dismiss its appeal upon the ground that the claim had been settled. That motion was sustained, but afterwards the compensation board entered a motion in the case to set aside the order sustaining the dismissal and it was overruled. It might be true that the question here involved was in a way presented on that motion, but not necessarily so, since under our practice the appellant had the right at any time to dismiss its appeal and to put the case out of this court, especially where there was no cross-appeal. Moreover, under the Adkins and Kerr cases, the widow had no compensable claim and to have sustained the motion and reinstated the case on the docket would have resulted in her even-

tually getting nothing. With such a presentation and the inevitable result that would follow, this court felt itself authorized to refuse to set aside the prior dismissal order and reinstate the appeal, since to do so would have resulted, we again repeat, in her getting nothing; for, in its last analysis, the question presented in this case was not involved, since it had theretofore been adjudged that the claim asserted was not one arising under the act, and the real question was only the right to compromise a claim for damages recoverable by an ordinary action. If, however, there had been no such considerations presented, we would then be confronted with the proposition as to whether we would follow the ruling made in that hastily as well as partially considered order. In view of the convincing reasons hereinbefore advanced, we would not be inclined to do so. However, in justice to the learned trial judge it is proper to say that he, according to his opinion, made a part of this record, coincided with the conclusion we have herein reached, but felt that he was bound by the order made in the Harris case, and but for which he would not have rendered the judgment appealed from.

Wherefore, the motion to grant the appeal is sustained, and the judgment is reversed, with directions to set it aside and to dispose of the appeal as though no attempted settlement had been made. Whole court sitting.