FRANK TOKASH, Appellant, v. MISSOURI WORKMEN'S COMPENSATION COMMISSION, LIBERTY MUTUAL INSURANCE COMPANY, and GENERAL BAKING COMPANY.—139 S. W. (2d) 978.

Division One, May 7, 1940.*

*NOTE: Opinion filed at September Term, 1939, March 6, 1940; motion for rehearing filed; motion overruled at May Term, 1940, May 7, 1940.

*John W. Barry* and *Wm. R. Schneider* for appellant.

*John F. Evans* for respondents.

BRADLEY, C.—This is an action in equity to set aside a judgment of the circuit court of St. Louis, reversing an award of the Workmen's Compensation Commission in favor of plaintiff, and to set aside an order (made by direction of the circuit court) of the commission denying compensation to plaintiff. The trial court dismissed plaintiff's petition and he appealed.

September 25, 1934, plaintiff, while doing some painting in St. Louis, for defendant, General Baking Company, fell and was injured. In due time he filed claim for compensation, and on June 17, 1935, the commission made a final award by which he was awarded compensation of $20 per week for not more than 400 weeks, and $817.60 for medical aid to April 21, 1935. Defendants, General Baking Company and Liberty Mutual Insurance Company, as employer and insurer, appealed from the final award of the commission.

The employer and insurer, in the compensation case, contended that claimant, plaintiff in the present cause, had no valid compensation case; that if he had any case at all, it was a common-law action for damages against his employer. The employer carried with the defendant insurance company, a policy covering liability under the compensation law and also a policy covering common-law liability. After the compensation case reached the circuit court, settlement was discussed, and an agreement reached by which the insurance company paid to plaintiff the sum of $3800, and plaintiff, on October 24, 1935, executed what is called a "release and settlement of claim."

After the release, there was filed in the circuit court the following stipulation:

"It is hereby stipulated and agreed, by and between the parties hereto (claimant and his attorney, employer and insurer and their attorneys) that the court may enter an order and judgment herein reversing the award of the Missouri Workmen's Compensation Commission with instructions to said commission to enter a new award of no compensation against Frank Tokash, employee, and in favor of General Baking Company, employer, and Liberty Mutual Insurance Company, insurer."

What is termed the judgment roll recites: "Now at this day come the parties hereto by their respective attorneys and file and present to the court a stipulation upon consideration and in accordance of which, it is ordered by the court that the findings and award of the Missouri Workmen's Compensation Commission of the final award after hearing, awarding plaintiff, employee for temporary, total disability, the sum of $20 per week, for a period of not more than 400 weeks during the continuation of said disability, and in addition thereto, the sum of $817 for medical aid to April 21, 1935, be set aside and vacated. It is further ordered by the court, in further pursuance to said stipulation, that this cause be remanded to the Missouri Workmen's Compensation Commission with directions to enter a new award of no

compensation against the plaintiff, employee, in favor of the defendants, employer and insurer, and that the costs hereto be paid by plaintiff for which let execution issue.''

What may be termed the stipulation judgment was entered October 25, 1935, and pursuant to this judgment, the commission, on November 18, 1935, entered an order denying compensation. The present case was filed September 16, 1937.

Plaintiff alleges, among other things, that the true facts in the compensation case were concealed from the circuit court; that the judgment was brought about by the connivance of plaintiff's then counsel, and counsel for the insurance company; that the ''judgment entered in accordance with the . . . stipulation of agreement and settlement constitutes a fraud, not only upon the plaintiff, but also upon the court in which it was entered and upon the Missouri Workmen's Compensation Commission.'' The insurance company and the baking company answered separately, by a general denial, estoppel and laches. The Attorney General filed a general denial for the Workmen's Compensation Commission, but took no part in the trial.

Plaintiff, not able to appear in court, testified by deposition, that his compensation case was in the hands of his then counsel. ''It was in his hands, and I had all the confidence in my attorney; I left it up to him. . . . He mailed those papers (release and stipulation, as we understand) to me, but I didn't know what to do. I was discouraged. I didn't like the idea. I knew I wasn't treated well, after a whole year waiting for a little help for myself and family, dependent on friends for help, compensation board give me an award, but I wasn't receiving anything. Then after I received that notice from Mr. Springmeier (plaintiff's attorney in the compensation case) to settle for $3,800 I was absolutely discouraged; didn't like it at all; I didn't know what to do; I lost my confidence in the compensation board, but I still had a little confidence in Mr. Springmeier. So my wife called him on the telephone to come over to the house for consultation. When Mr. Springmeier arrived I asked him, I said, 'Mr. Springmeier, I don't think this is justice. After I have been waiting a whole year to receive help, and I haven't got a penny, now they want to take everything away from me; just give me what they feel like it, because they know I must be starving.' That is what I told Mr. Springmeier before I signed any papers at all. We had quite a long conversation. I said, 'Mr. Springmeier, will you give me about a week or two for consideration before I got into any other details,' and Mr. Springmeier said, 'No, they won't stand for that.' I don't know who he meant 'they.' That is just what he said. 'They won't stand for it.' They give me three days to make up my mind, what I will do, whether I will accept that offer or whether I reject; It was for me to take it or leave it. . . . Mr. Springmeier tells me that

if I don't accept that I got a chance to lose it and don't get nothing at all.'' Springmeier was not a witness.

On cross-examination plaintiff testified: ''Q. In other words, you knew you were not entirely well in the fall of 1935, but you were better than you were in the spring of 1935, or the fall of 1934? A. Yes, sir; I was better than I was when I got hurt. Q. And as far as signing this paper (release or stipulation—not clear) you have identified, you did that voluntarily? Nobody forced you? A. Nobody forced me, but there was no other way for me out, after consultation with my attorney; there was no other way for me out. Q. In other words, your attorney advised you that it was the best thing for you to do under the circumstances? Is that what you mean? A. Exactly.''

John F. Evans, counsel for the employer and insurer in the compensation case and counsel for these parties in the present case, testified that ''before the suit (compensation case) was filed we (his firm) had been always handling the matter as a common law claim. . . . We have contended from the start that this man was not under the compensation law. . . . That if this man had a claim it was a common law action for personal injuries against the General Baking Company. . . . Mr. Springmeier, who represented Mr. Tokash at that time, had made many, many suggestions about settling the matter. I had advised him constantly, at all times, that I was not interested in settling any compensation case; that I expected to go through with the appeal. And we had argued (in the circuit court) the matter orally, and had filed briefs . . . Shortly after filing a memorandum brief in there Mr. Springmeier again suggested settlement, and at that time I remember distinctly that it was stated that if they lost this case, this compensation appeal, they would still have the common law claim. I told him at that time, if we could suggest a manner of disposing of his compensation claim . . . I would settle the common law claim with him. And that is what was done.''

█ Counsel for plaintiff, appellant here, say that the stipulation judgment should be set aside for three reasons, viz., fraud in its procurement, mistake in its procurement, and that the court, in the situation, was without jurisdiction to enter on the stipulation. There is no evidence of any *connivance* between counsel to bring about the result reached, and no evidence of fraud, but as we see the situation, failure to show fraud does not dispose of the case. And there was no mistake unless on the construction of Sec. 3333, R. S. 1929, Mo. Stat. Ann., p. 8267.

Sec. 3333 provides: ''Nothing in this chapter (compensation statute) shall be construed as preventing the parties to claims hereunder from entering into voluntary agreements in settlement thereof, but no argeement by an employee or his dependants to waive his rights under this chapter shall be valid, nor shall any agreement of settlement or compromise of any dispute or claim for compensation

under this chapter be valid *until approved by the commission*, nor shall the commission approve any settlement which is not in accordance with the rights of the parties as given in this chapter. . . ." (Italics ours.)

As supporting the proposition that a compensation claim cannot be validly *settled* by agreement between the parties, plaintiff cites from this State, Harder v. Thrift Construction Co. et al. (Mo. App.), 53 S. W. (2d) 34; De Tienne v. Wellsville Fire Brick Co. et al. (Mo. App.), 70 S. W. (2d) 369; Shout v. Gunite Concrete & Construction Co. et al., 226 Mo. App. 388, 41 S. W. (2d) 629; and O'Malley v. Mack International Motor Truck Corp. et al., 225 Mo. App. 1, 31 S. W. (2d) 554.

In the Harder case, it appears that on October 27, 1928, James H. Harder, while in the course of his employment, was severely burned. December 3, "a final receipt of compensation, signed by the employee, was filed with the commission, showing the termination of disability on December 2, 1928, and the payment of compensation in the total sum of $102.86 for 5-1/7 weeks of disability. The receipt recited that in consideration of such payments *the employee released and discharged the employer* from all liability under the act by reason of the accident. . . . However, nothing appears to have been done by the commission either *by way of approval or rejection of such settlement agreement*." (Italics ours.) March 17, 1929, Harder died of a disease caused to become active by the burns. A claim thereafter prosecuted by the widow was resisted on the ground, among others, that the *settlement* made with the employee was final and precluded allowance of compensation to the widow. This contention was rejected. The court said (53 S. W. (2d) l. c. 36): "Here the formal claim (to be treated in effect as an amended claim) was for injuries and disability differing from what was covered by the settlement agreement; and inasmuch as the settlement agreement *had not been approved* and an award rendered thereon, the full amount of compensation to be awarded was still an open question to be determined by the commission after a hearing upon the actual facts in the case. Consequently the contention that the commission was limited in its jurisdiction to a review of the fairness of the settlement agreement must be held to be without merit." (Italics ours.)

It is not necessary to review the other cases, supra. All are to the effect that any *settlement*, between the parties, of a compensation claim, pending before the commission, is not valid unless approved by the commission.

Jones v. F. W. Woolworth Co. et al. (Mo. App.), 122 S. W. (2d) 41 is, we think, pertinent here. It appears, in that case, that plaintiff, on March 2, 1928, sustained a compensable injury while employed by the Woolworth Company. The Travelers Insurance Company, the other defendant, was the insurer. March 12, 1928, plaintiff and

the insurer entered into an agreement (under Sec. 3334, R. S. 1929, Mo. Stat. Ann., p. 8268) filed with the commission, by which agreement the insurer was to pay plaintiff $6.66 per week ''for such time as is provided in said act or until the parties otherwise agree.'' Under the agreement, the insurer paid plaintiff the $6.66 per week for 53 weeks, and on May 4, 1929, filed with the commission, notice of disagreement, which recited that the ''employee contends she is still disabled. Employer and insurer contend disability has ended.'' Hearing was set and notice thereof given, but plaintiff did not appear and ''the claim was dismissed for want of prosecution.'' January 20, 1933, plaintiff filed, with the commission, notice of disagreement, and requested a hearing. In response to this notice, the commission merely informed plaintiff that her claim had been dismissed for want of prosecution. Plaintiff then brought suit, on the agreement to pay her $6.66, against both the employer and insurer. The trial resulted in a verdict and judgment against the insurance company, but the finding was against plaintiff as to the employer. The trial court, (on the ground that it did not have jurisdiction) granted a new trial to the insurance company, and plaintiff appealed. The order granting the new trial was affirmed. In ruling the case the court said (122 S. W. (2d) l. c. 44):

''It is clear that the agreement in suit here is not suable at common law. It was for the commission to approve the agreement and make and award upon it or not, agreeably to its accordance or not with the compensation law and the rights of the parties under the law, as the commission was advised. The commission not having approved the agreement and having made no award thereon the question of compensation remained open for the decision of the commission upon a proper hearing as provided for the compensation law, and plaintiff had six months at least after the last payment was made on account of the injury in which to file her claim for compensation.''

Counsel cite no case and we find none, in this State, where the facts are similar to the facts here; but similar facts have been ruled in other jurisdictions. In Department of Industrial Relations v. Travelers' Ins. Co., 177 Ga. 669, 170 S. E. 883, a claimant, under the Georgia compensation law, was awarded $8.75 per week and to continue ''during his disability.'' Appeal was taken to the superior court, and that court, pursuant to an agreement between the insurer and the claimant, rendered a judgment against the insurer ''and in favor of the claimant for the lump sum of $750 in full and final settlement of the claim.'' The question of the validity of this lump sum judgment reached the Supreme Court and the judgment was held void because of a statute (Ga. Laws 1920, Sec. 59, p. 198) which provided that in an appeal of a compensation claim from the commission to the superior court, the court could set aside the ''order or decree

of the" commission if it were found: (1) that the commission acted without or in excess of its powers; (2) that the order or decree was procured by fraud; (3) that the facts found by the commission do not support the order of decree; (4) that there is not sufficient competent evidence in the record to warrant the commission in making the order or decree complained of; or (5) that the order or decree is contrary to law. The Georgia Supreme Court held that the lump sum judgment was made without authority, because not within the purview of the statute.

In Industrial Commissions of Colorado v. London Guarantee & Accident Co. et al., 66 Colo. 575, 185 Pac. 344, claimant was awarded compensation by the commission, and the insurer appealed to the district court, and while the cause was there pending the employee and the insurer "entered into a stipulation for a settlement" of the claim for a less sum than awarded by the commission. Under a statute, the commission was made a party in the case on appeal; and, when the stipulation was filed in the district court, the commission objected and "insisted that the court could give judgment only after a hearing and under the limitations of the Workmen's Compensation Act." Judgment, however, was entered on the stipulation, and the commission brought error.

The Colorado statute provided: "If the injured employee or his dependents, and the employer or his insurer reach an agreement in regard to compensation under this act, a memorandum of the agreement shall be filed with the commission, and, if approved by it, thereupon the memorandum for all purposes, shall be enforceable as are all the awards of the commission. All such agreements shall be approved by the commission. Such approval shall be given by the commission only when the terms thereof conform to the provisions of this act."

The Supreme Court of Colorado held that the stipulation judgment was void. In the course of the opinion the court said: "Counsel for defendants in error urge that, as the insurance company and Brown (employee) are the only parties financially interested, they may settle the controversy, and, if such settlement is approved by the district court, it must stand. This ignores a very important consideration in the case. Inasmuch as the statute provides that the commission be made a party to the proceedings in the District Court, it cannot be supposed that the cause there may be conducted solely by the other parties. The commission has a function to perform in the District Court, and that manifestly is to defend its award, in the interest both of the claimant and of the State. The Workmen's Compensation Act is an acknowledgment by the State of a duty to aid the injured employees in securing compensation for their injuries, and to prevent the delays and miscarriage of justice which sometimes

occurred in personal injury actions in the courts. As has been frequently pointed out, the State has an interest in the recovery of just compensation by injured employees to the end that they do not, because of their injuries, become public charges. . . . Under this statute a settlement made on stipulation in court is no more effective without the approval of the commission than is any other settlement."

To the same effect as the Colorado case, supra, are Mass. Bonding & Ins. Co. v. Industrial Accident Commission, 176 Cal. 488, 168 Pac. 1050; Workmen's Compensation Board v. Abbott et al., 212 Ky. 123, 278 S. W. 533, 47 A. L. R. 789, and the rulings in these cases are based on statutes similar in effect to our Sec. 3333.

 It is true, in the present case, that the commission filed an answer which, in effect, denied that the circuit court did not have the power to enter the stipulation judgment, and the commission, by direction of the circuit court, entered an order denying compensation. However, it is not claimed that the answer or the order (made by direction) of the commission should be taken as an approval by the commission of the stipulation judgment. The answer, in the situation, was a mere formality, and the commission had no discretion as to the order, and this because such was made by direction of the court.

It is also true, in the present case, that the stipulation judgment is *different* to any of the judgments in the cases (from other jurisdictions) reviewed, supra, in that the present judgment was to the effect that plaintiff did not have any lawful claim for compensation *in any sum,* but that is not important. The important thing is that, by the course followed, the claimant, the employer, and the insurer *settled* a compensation case without the approval of the commission. We are constrained to rule that the stipulation judgment and order of the commission made in pursuance of this judgment are, under the facts, void. To rule otherwise would, we think, be to wholly ignore Sec. 3333, supra.

 However, a question on the stipulation judgment, and pertinent here, yet remains. Will a suit in equity lie, as is the present case, to set aside the judgment? If the judgment is void on its face, then the present suit will not lie, and this because a judgment, void on its face, "binds no one." [Abernathy v. Mo. Pac. Ry. Co., 287 Mo. 30, 228 S. W. 486; National Union Fire Ins. Co. v. Vermillion (Mo. App.), 19 S. W. (2d) 776, l. c. 783, and cases there cited.] But is the stipulation judgment void on its face? We do not think so. That the circuit court had jurisdiction of the subject matter and the parties in the compensation appeal, cannot be and is not questioned. The only thing that vitiates the stipulation judgment is that it was arrived at without the *approval* of the commission. There is nothing on the face of the judgment that shows that the approval of the commission was not obtained, and, since right action is presumed

(Rollins et al. v. Shaner et al., 316 Mo. 953, 292 S. W. 419), the presumption would be that such approval was obtained. But the facts, unfolded, disclose that such approval was obtained. In the situation, we think that the present suit to set aside will lie, and so rule.

■ It is contended that, even though the stipulation judgment and the order of the commission made pursuant thereto, are void, plaintiff should, nevertheless, be denied the relief sought on the theory of estoppel and laches. Defendants, in their brief, say that plaintiff's "actions estop him from attacking the validity of the judgment." In Gieseking v. Litchfield & Madison Ry. Co., 339 Mo. 1, 94 S. W. (2d) 375, and Id., 344 Mo. 672, 127 S. W. (2d) 700, it was held that acceptance of benefits under a State Compensation Law by an employee, injured while engaged in interstate commerce work, did not preclude recovery under the Federal Employers' Liability Act. [45 U. S. C. A., Secs. 51-59.] However, it was also held (344 Mo. 672, 127 S. W. (2d) 1. c. 703) that the amount received by the employee as payments under the compensation law should be credited on the amount recovered under the federal act. The course of reason was that if the plaintiff, when injured, was entitled to recover under the federal act, he was not entitled to compensation under the state compensation act. An so in the present case, if plaintiff is entitled to compensation under our compensation law, he was not entitled to recover damages under the common law, and if it is determined that plaintiff is entitled to compensation, then, in justice, the $3800, with interest, should be deducted from the award. We do not think that plaintiff is estopped and so rule.

■ Should plaintiff be cast on the theory of laches? "Laches is purely a creation of equity, and is only to be invoked by the defendant in a case where the plaintiff appeals to equity, and seeks the enforcement of an equitable right. Laches in equity is a doctrine which partakes of the nature of the legal statutory limitation, but is not governed, as to time, by such statute. It may be inequitable to permit the establishment of an equitable right within a time less than the legal defense of the statutory limitations. Whether one has been guilty of laches in the prosecution of an equitable right is solely upon the facts presented and the inequitable result which might follow the establishment of a stale claim. Lapse of time is not the only thing for consideration." [Kellogg et al. v. Moore, 271 Mo. 189, 196 S. W. 15, 1. c. 16; Lustenberger et al. v. Hutchinson et al., 343 Mo. 51, 119 S. W. (2d) 921, 1. c. 926.]

The record shows that by far the greater part of the two years that lapsed from the date of the stipulation judgment, plaintiff was confined to his bed, and was so confined at the time of the trial. There is no place for laches here.

The judgment should be reversed and the cause remanded with directions to enter judgment in accordance with the prayer of plaintiff's petition, and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.

---

*NOTE: Opinion filed at September Term, 1939, March 6, 1940; motion for rehearing filed; motion overruled at May Term, 1940, May 7, 1940.