RUBY O. LOUDENSLAGER and CHARLOTTE LOUDENSLAGER v. JACK GORUM and NATIONAL MUTUAL CASUALTY COMPANY, Appellants.—No. 39532.—195 S. W. (2d) 498.

Court en Banc, June 10, 1946.

Rehearing Denied, July 8, 1946.

182

*Dale Tourtelot, Joseph N. Hassett* and *Ernest E. Baker* for appellants.

*Lawrence E. Goldman, E. H. Gamble,* and *Sam Mandell* for respondents.

HYDE, J.—This is a Workmen's Compensation case. Claimants, widow and minor daughter of Guy Loudenslager, deceased, had an award of $9,521.00 for his death. Defendants, found to be the employer and insurer, have appealed from a judgment affirming this award.

On June 18, 1941, Loudenslager, while driving his truck in the service of Gorum, was killed in a collision with another truck near Pine Bluff, Arkansas. Gorum had a trucking business, called Arkansas Traveler Truck Lines, with headquarters at Bentonville, Arkansas. He operated in four states, Missouri, Arkansas, Louisiana, and Mississippi. Defendants contend that Loudenslager was not an employee but an independent contractor. They obtained a finding to that effect from the Arkansas Workmen's Compensation Commission on a claim previously filed there by claimants.

The principal contention urged by defendants is that under the full faith and credit clause, Article IV, Section 1, of the Constitution of the United States, the order denying compensation for his death under the Arkansas Workmen's Compensation Act of 1939 (Acts of Ark. 1939, p. 777) bars this award of compensation under the Missouri Workmen's Compensation Act, Chapter 29, Secs. 3689-3766 (R. S. 1939) Mo. Stat. Ann. Claimants contend that they made an effective dismissal of the Arkansas proceeding and that the order was a nullity. They claim that the Missouri Commission had jurisdiction on the ground that the contract of employment was made in this state. (Sec. 3700b, R. S. 1939, Mo. Stat. Ann.)

In July 1941, claimants filed a claim with the Arkansas Workmen's Compensation Commission, and defendants denied that Loudenslager was an employee. A hearing thereon was begun by a member of the Commission on December 15, 1941, which continued until December 17, 1941, when it was continued at claimants' request. On the same day, claimants filed their claim with the Missouri Workmen's Compensation Commission. Thereafter, on January 3, 1942, they filed, with the Arkansas Commission, a dismissal reading as follows: "Comes now Ruby O. Loudenslager, individually as widow, and as guardian of Charlotte Loudenslager minor dependent of deceased employee, Guy Loudenslager, by her attorneys, and dismisses the above captioned claim for compensation and death benefits, without prejudice."

Defendants filed objections to this dismissal which were heard by the Commissioner on January 24, 1942. Claimants did not appear. It was treated as a motion to dismiss and an order was entered denying it on grounds stated as follows: "First, that no tender of the costs accrued herein has been made by the claimant; second, that it is the duty of the Commission upon inquiry or hearing to ascertain the rights of all the parties to the issue." Thereafter, on February 16, 1942, an order denying claimants' claim on the merits was entered, with findings of fact and conclusions of law to the effect that Loudenslager was not an employee of Gorum but an independent contractor. Claimants did not appeal. Therefore, under the Arkansas Act (Sec. 25b), this order became conclusive and binding.

Defendants rely on Magnolia Petroleum Co. v. Hunt, 320 U. S. 430, 64 S. Ct. 208, 88 L. Ed. 149; Chicago, R. I. & P. R. Co. v. Schendel, 270 U. S. 611, 46 S. Ct. 420, 70 L. Ed. 757; and Overcash v. Yellow Transit Co., 352 Mo. 993, 180 S. W. (2d) 678. They say that the order of the Arkansas Commission was res judicata of the issues before the Missouri Commission; that the ruling of the Arkansas Commission on the effect of the dismissal, and its authority to deny dismissal and determine the case on the merits, whether right or wrong, is binding on the Missouri Commission; and that the dismissal was properly denied because the Arkansas Act (Sec. 23c) provides, as to any claim, the Commission, "upon application of any interested party, shall order a hearing thereof." However, there was no provision of the Arkansas Act, and no rule made by the Commission, which either authorized or prohibited a dismissal by a claimant. (Arkansas statutes authorize dismissals of civil actions at any time before final submission, Secs. 1485-1486 Pope's Digest; Norton v. Hutchins, 120 S. W. (2d) 358.) Therefore, claimants contend that the common law right to dismiss at any time before verdict or decision on the merits must apply. (27 C. J. S. 170, sec. 18; 17 Am. Jur. 65, Sec. 14:) So they say that the Arkansas order is subject to collateral attack to show that the Commission lost jurisdiction to make

the finding on the merits because of the dismissal prior thereto, citing Leichty v. Kansas City Bridge Co., 354 Mo. 629, 190 S. W. (2d) 201. They point out that there was no issue of dismissal in the Magnolia Petroleum Company case or in the Schendel case. Also in the Overcash case, the claimant made only an informal request for dismissal which was abandoned but, what is more important, was asking for dismissal of the whole claim in which her daughter was also interested and represented by separate counsel who did not join in the request but continued to prosecute the claim.

Arkansas does hold that a court has no jurisdiction after a valid dismissal, and in Norton v. Hutchins, supra, prohibited further action on that ground in a case which had been dismissed by the plaintiff. However, Arkansas courts have not construed this provision of its Compensation Act; and we cannot say that the Commission's construction of it (to prevent dismissal after a hearing has been commenced, at claimants' request, and when the adverse party objects) violates due process or any principle of law which would make its order subject to collateral attack. In Krisman v. Unemployment Compensation Commission, 351 Mo. 18, 171 S. W. (2d) 575, we held that a claimant for unemployment compensation could not dismiss as a matter of right. Our Workmen's Compensation Act (Sec. 3723, R. S. 1939, Mo. Stat. Ann.; See also Tokash v. Workmen's Compensation Commission, 346 Mo. 100, 139 S. W. (2d) 978) does not even permit a voluntary settlement of a claim without the approval of the Commission. Therefore, we must find that the Arkansas Commission had jurisdiction to make the order refusing compensation.

Nevertheless, we do not think that the Schendel and Magnolia Petroleum Company cases prohibit the award made herein by the Missouri Commission. In each of those cases, a substantial award was made to the claimant in the state in which the matter was first litigated. In the Schendel case, the award was affirmed after judicial review, and in the Magnolia case it was paid to claimant, before there was any determination of rights in other states. However, the Arkansas Commission found that these claimants were not entitled to anything under the Arkansas Act. The questions of who is an employer and who is an employee, under compensation acts, do not usually depend upon common law principles (although they may be considered in their construction) but depend instead upon the terms and definitions of such Acts. Under our Act certain independent contractors are deemed employees (Sec. 3698a, R. S. 1939, Mo. Stat. Ann.); and this is also true of certain tenants or lessees and their employees. (Sec. 3698b, R. S. 1939, Mo. Stat. Ann.) Likewise only certain employers are under it. The Workmen's Compensation Acts of Missouri and Arkansas are different in many respects. Therefore, the finding of the Arkansas Commission that claimants had no remedy to recover anything for Loudenslager's death under the Arkansas

Act does not mean that they could not be given a remedy therefor by the Missouri Act. This very exception to the application of the full faith and credit clause is thus stated by the United States Supreme Court (64 S. Ct. 1. c. 216) in the majority opinion in the Magnolia Petroleum Company case: "The fact that a suitor has been denied a remedy by one state because it does not afford a remedy for the particular wrong alleged, may not bar recovery in another state which does provide a remedy. See Troxell v. Delaware, L. & W. R. Co., 227 U. S. 434, 33 S. Ct. 274, 57 L. Ed. 586; cf. Ash Sheep Co. v. United States, 252 U. S. 159, 170, 40 S. Ct. 241, 244, 64 L. Ed. 507. But as we decided in the Schendel case it is a very different matter to say that recovery can be had in every state which affords a remedy." Claimants herein, of course, have only one recovery; and if it fails to stand up, they would have none.

In the Troxell case, Pennsylvania afforded no remedy for injuries caused by the negligence of a fellow servant. Troxell died of injuries so caused. His wife brought suit under Pennsylvania statutes, based on negligence of the railroad in failing to furnish proper safety appliances. Her recovery in the trial court was reversed and she then sued under the Federal Employers' Liability Act on fellow servant negligence. The United States Supreme Court held that this second action was not barred by the adverse judgment in the first, saying: "Under the Pennsylvania law there could be no recovery for the negligence of the fellow servants of the deceased. This was the issue upon which the case was submitted at the second trial and a recovery had. Whether the plaintiff could recover under the Pennsylvania statute was not involved in the second action, and the plaintiff's right to recover because of the injury by the negligence of the fellow servants was not involved in or concluded by the first suit." Likewise, the question of whether claimants had a remedy under the Arkansas Act was not involved in this case, and claimants' rights under the Missouri Act were not involved in the Arkansas proceeding.

Furthermore, as said in Alaska Packers Assn. v. Industrial Accident Commission, 294 U. S. 532, 55 S. Ct. 518, 79 L. Ed. 1044 "the liability under Workmen's Compensation Acts is not for a tort", the legal consequence of which must be controlled by the law of the place where the tortious act is committed. On the contrary, liability therefor "is imposed as an incident of the employment relationship, as a cost to be borne by the business enterprise, rather than as an attempt to extend redress for a wrongful act of the employer." The United States Supreme Court upheld therein the right of the state, in which the contract of employment was made, to award compensation although the injury occurred in another jurisdiction which also provided for compensation in that event. It held that California (where the contract was made) did not violate the full faith and credit clause by refusing to allow as a defense the statute of Alaska

(where the injury occurred). The Court recognized that the two statutes were in conflict, but said: "A rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that wherever the conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be in its own." Therefore, it held that the state, in which the contract was made, had sufficient control over the status created thereby to give effect to legal consequences resulting therefrom, created by its own statutes. (See also Pacific Employers' Ins. Co. v. Industrial Accident Commission, 306 U. S. 493, 59 S. Ct. 629, 83 L. Ed. 940.)

In this case, Loudenslager was not only a resident of Missouri, as are his dependents, but a substantial part of his services under the contract were to be performed in this state. The Commission found that, at the time of the accident, the employer had elected to accept the Missouri Act. No question as to the correctness of this finding is now raised. In fact, it was admitted by the employer before the Commission. It seems clear, under the tests of the Alaska Packers' case, and the Pacific Employers' case, that Missouri has sufficient interest to justify the enforcement of its own act in this case. We hold that the full faith and credit clause does not prevent the affirmance of this award.

The sufficiency of the evidence, in the Missouri hearing, to support the finding that the contract of employment, under which Loudenslager was working at the time of his death, was made in this state, is not questioned. Neither is there any question as to the sufficiency of the evidence to support the finding that, under this contract, he was an employee of Gorum within the meaning of the Missouri Act. (Defendants, in the Arkansas hearing, relied upon an earlier contract made in that state, which claimants showed had been terminated prior to the making of the ▓ Missouri contract.) We, therefore, hold that the Circuit Court properly affirmed the award of the Missouri Workmen's Compensation Commission as to the employer.

It is further contended that this award should not be affirmed against the insurer because it is claimed that the Casualty Company only insured the employer under the Arkansas Act and that it had never qualified to write Workmen's Compensation Insurance in Missouri. The Casualty Company says that there was not sufficient competent evidence in the record to support the finding that it insured Gorum's liability under the Missouri Act. It cites cases, such as Salkind v. Pennsylvania Threshermen and Farmers Mutual Ins. Co. (Penn.), 6 Atl. (2d) 301 and Federal Underwriters Exchange v. Doyle (Tex.), 110 S. W. (2d) 618, holding that insurance covering Workmen's Compensation Liability in the employer's home state did

not cover liability under the compensation laws of another state in to which a workman had been sent and was injured.

However, the situation here is very different. The Casualty Company issued the insurance, herein involved, by merely writing the following letter: "Dear Mr. Gorum: The National Mutual Casualty Company is hereby bound and agrees to pay any loss created or occurring to the Arkansas Traveler Truck Line, of Bentonville, Arkansas, from April 16, 1941, to June 25, 1941. This binder covers the Arkansas Traveler Truck Line the same as if their Workmen's Compensation Policy had been issued. Nathan C. Agnet, General Agent."

This binder did not limit the liability to Arkansas or any other state. It contained no exceptions. The essentials of such a contract may be implied. (See 29 Am. Jur. 158, sec. 143.) The Casualty Company offered no evidence to explain it or to show that it did not remain in force. It must have known that Gorum's truck line operated through several states, because it later issued to him general bodily injury and property damage liability policy covering his operations everywhere. This policy expressly stated "no exceptions", and provided that this insurance "shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable;" and described the very tractor and trailer which Loudenslager was operating at the time of his death. This policy had an endorsement making it cover Arkansas Compensation Act liability, but the binder was not referred to or cancelled and had not expired by its terms. Since the employer admitted acceptance of the Missouri Act, he was obligated to insure his workmen's compensation liability under it. (Sec. 3713, R. S. 1939, Mo. Stat. Ann) The Casualty Company cites no authority which would prohibit the enforcement of such insurance if it did issue it without properly qualifying. (See 44 C. J. S. 1004, Sec. 242.) In Pennsylvania Manufacturers' Casualty Ins. Co. v. Schmerbeck (N. J.), 24 Atl. (2d) 573, cited by defendant, "the contract of insurance covered accidents where the matter of compensation was controlled by the Pennsylvania Compensation Act only and no others." ("The contract so provides.") That was the reason why the insurer was dismissed from the New Jersey proceeding. Because of the broad terms of this binder (covering "any loss created or occurring to the Arkansas Traveler Truck Line"), and its stated purpose to cover Workmen's Compensation Liability, we cannot say that the finding of the Commission on this issue was without substantial support.

The judgment is affirmed. All concur.