EDNA MAE COY and SHIRLEY ANN COY, Widow and Minor Daughter of RICHARD COY, Deceased, Respondents, v. SEARS, ROEBUCK AND COMPANY, Appellant, No. 43003—253 S. W. (2d) 816.

Division Two, January 9, 1953.

*Lathrop, Woodson, Righter, Blackwell & Parker, Winston H. Woodson* and *William M. Stapleton* for appellant.

812

*Robert A. Schroeder, Laurence R. Smith* and *Ben W. Swofford* for respondents; *Swofford, Schroeder & Shankland* of counsel.

814

BARRETT, C.—Richard Coy was fatally injured on Friday, April 2, 1948, about 10:45 p.m., when his automobile, traveling south on Sixth Street in St. Joseph, collided with a freight train. Richard was employed by Sears, Roebuck and Company, and upon the theory that he was an "employee" at the time of his fatal injury his dependent wife and minor daughter instituted this claim for the death benefits provided by the Workmen's Compensation Law. The Industrial Commission has found that he was an "employee" at the time and has made an award of $12,508. The decisive question before the Industrial Commission and upon this appeal is whether he was an "employee" at the time of his fatal injury. Sears, Roebuck contends that he was not subject to its control at the time, that it had no right to control and did not exercise control over him and, therefore, he was not an "employee." If he was an employee the appellant does not question that the fatal accident arose out of and in the course of his employment. Coy's death occurred prior to the effective date of the amendment of 1947 (Laws Mo. 1947, Vol. II, p. 438) and it is claimed, in the second place, if he were an employee that his annual earnings exceeded the sum of $3600 and for that reason he was excluded as an employee from the provisions of the law. 1939 Mo. R. S., Sec. 3695. The ultimate question upon this appeal is whether the Commission's findings

that he was an employee and that his average annual earnings did not exceed the sum of $3600 is supported by competent and substantial evidence upon the whole record. Thacker v. Massman Const. Co., (Mo.) 247 S. W. (2) 623; Heisey v. Tide Water Oil Co., (Mo. App.) 92 S. W. (2) 922.

Richard was employed by Sears, Roebuck and Company in September 1945 as a receiving clerk. In 1947 he was transferred to the position of "inside salesman" of hardware, sporting goods and automobile accessories. On the 1st day of March 1948 he was promoted to the position of "inside and outside salesman" of electrical appliances. Under his latter appointment his sales territory of Sears' appliances was anywhere in St. Joseph. He was paid a commission of five percent on all sales [818] except mail order sales, for which he received a commission of two° and one half per cent, and against which commissions he was allowed a drawing account of $45 per week. The regular working hours of Sears' employees were from 8:30 to 5:30 daily, six days a week, not including Sundays, and it is the specific claim of Sears that Coy's services and employment fell into two categories, those he was *required* to perform from 8:30 to 5:30 and "those sales which he was permitted to make after store hours on his own initiative—'*if he wanted to.*' " It is said that a different relationship or status existed and that he was not an employee when he was soliciting and attempting to make sales after store hours, under whatever circumstances he chose, on his own initiative.

On April 2nd, 1948, he worked in the store until 5:30. His wife met him at that time and, after doing some shopping, they ate dinner at the "Bucket Shop" and arrived home at 7 o'clock. About 8 o'clock Richard left home with his order book and catalogue, after asking his wife to go with him. About 10:15 he called and informed her of his destination. The day before he had talked to a bartender, Leroy Frank Clark, about purchasing a washing machine and on April 2nd called and made an appointment to see him at his place of business, the B & M Bar, 2301 Sixth Street, that evening. Ten or fifteen minutes after calling his wife he was traveling south on Sixth Street, north of and on the route to the B & M Bar, when his automobile collided with the train. His Sears order book was found in his pocket, and there were other Sears' supplies in his automobile.

Generally, in determining whether a person is an employee within the meaning of the compensation law, the courts have said that the relationship of master and servant must exist, and the test of the existence of the relationship is the right to control the means and manner of the service as distinguished from controlling the ultimate results of the service. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S. W. (2) 909; McQuerrey v. St. John Mfg. Co.,

240 Mo. App. 720, 216 S. W. (2) 534. But every case has been decided on its particular facts, and while the element of control is of the greatest significance in determining the existence of the required relationship, the fact of control standing alone is not conclusive. Garcia v. Vix Ice Cream Co., (Mo. App.) 147 S. W. (2) 141, 143. The compensation law does not employ the terms "master" and "servant" and it would probably be more accurate to say that the broader status or relationship connoted by "employer" and "employee" must obtain between the parties. V.A.M.S. Secs. 287.020, 287.030, 287.040. There is some analogy, as the appellant urges, in the negligence cases in which the employer's liability to third persons is dependent upon the applicability of the common law doctrines of respondeat superior and independent contractor (Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 117 S. W. (2) 252), but it was never contemplated that liability under the compensation law should be limited to those common law concepts, even though the relationship of employer and employee must in fact exist. "The questions of who is an employer and who is an employee, under compensation acts, do not usually depend upon common law principles (although they may be considered in their construction) but depend instead upon the terms and definitions of such Acts." Loudenslager v. Gorum, 355 Mo. 181, 187, 195 S. W. (2) 498. Despite the analogies, the common law concepts are not sufficiently broad to encompass employments and professions now clearly within the terms and protection of the compensation laws. 1 Larson, Workmen's Compensation, Sec. 43.50, p. 632. New and different business methods and techniques change the basic facts and thus expand the implication of the fundamental terms employed in the law. Gordon v. New York Life Ins. Co., 300 N. Y. 652, 90 N. E. (2) 898. There are limits, however, beyond which the provisions of the compensation law may not be stretched by interpretation, and the relationship and status of employer and employee must in fact exist. As suggested, an employee may be within the provisions of the Workmen's Compensation [819] Law part of the time, and at other times not within its protection, and ordinarily, in this connection, the relationship of employer and employee is suspended during the period the employee is off duty. 58 Am. Jur., Secs. 84, 224, pp. 637, 729. However, one may be an employee of the same employer in a dual capacity (Cameron v. Pillsbury, 173 Cal. 83, 159 Pac. 149) and an injury sustained outside regular working hours may nevertheless be compensable in some circumstances, particularly if the employee was at the time engaged in some service for the benefit of the employer in connection with his regular duties. 58 Am. Jur., Sec. 224; Wamhoff v. Wagner Electric Corp., 354 Mo. 711, 190 S.W. (2) 915. When the control test is applied, it is the ultimate

right to control and not the overt exercise of that right which is decisive. 1 Larson, Workmen's Compensation, Sec. 44.

As an "inside salesman" Richard's sales were all made within the store, during the regular working hours of 8:30 to 5:30. After his promotion to "inside and outside salesman," the manager said that he was authorized to sell appliances outside the store. In his new position he was required to own an automobile and carry liability insurance. He was the only employee authorized to work and sell merchandise both inside and outside the store. While it was insisted throughout the trial that Richard's working hours were restricted to the regular hours of 8:30 to 5:30, Sears, in making its admissions before the referee, stipulated that if Richard procured an order after regular hours or on Sunday Sears would have filled the order, but it was insisted, in the stipulation, during those hours that he was not acting for Sears but was "merely acting, so that he could, on those days, sell more merchandise and increase his earnings." On this particular point the store manager said, "Q. Let me ask you this question—he was permitted by your company to go out and make sales for the company after the store closed, wasn't he? A. Yes. Q. And if he wanted to go out and make a sale at 11:00 or 12:00 o'clock at night, there wasn't any direction or rule of your company that would have denied him that right, was there? A. That is right. Q. And after March 1st, 1948, your company did not put any restrictions on Mr. Coy, as to the hours he might work, did they? A. No, they did not. * * * Q. Now, assuming that Mr. Coy received an order given to him on a Sunday, would such an order have been refused by your company? A. Since he was an employee of the company, we would have to fulfill the contract of delivering. Q. And you would have done so? A. Yes. Q. Now another thing, when these contracts, these order blanks were executed, I notice on the top of them it says, 'Subject to the approval of the Credit Department of Sears, Roebuck and Company?' A. That is right. Q. In other words, when the signature was made on one of these, it then went to your Credit Department didn't it? A. Yes." Richard's wife and members of her family testified that in the thirty-three days of his new employment he worked and attempted to make sales of electrical appliances every night as well as on Sundays.

The appellant admits that Richard was *permitted* to make sales after store hours "if he wanted to" but insists that they were wholly dependent on his own initiative and not as an employee. It is not contended that he was an independent contractor, and it is undisputed that he had no other employment or occupation and was subject to being discharged any time. In his changed employment with Sears he was required to have an automobile and purchased the one he was using shortly before assuming his new work. He was required to carry liability insurance, and though he made no claim for it in the

thirty-three day period was entitled to reimbursement for automobile expense incurred while on company business. The [820] manager readily conceded that orders obtained at night or on Sundays would have been filled. He was at liberty to sell any responsible person anywhere in the territory. While his commissions were dependent on his own initiative, his sales and orders were all subject to ultimate approval by the company and its credit department which is indicative of some degree of control. Aisenberg v. C. F. Adams Co., 95 Conn. 419, 111 Atl. 591. "If Baldwin had been given authority carte blanche to go out and sell cabinets at a given price and on given terms and bind his employer thereby, it might be argued with some semblance of merit that Baldwin was an independent contractor and not subject to the control of his employer except as to result. But such was not the case here; Baldwin was definitely subject to the orders and directions and control of Shaw as to every sales transaction which he promoted, and was subject to being discharged with or without cause at any time." Baldwin v. Gianladis, (Mo. App.) 159 S. W. (2) 706, 709. Conflicting inferences might reasonably be drawn (Gordon v. New York Life Ins. Co., supra) but in all the circumstances it may not be said that the Commission's finding that Richard was an employee at the time of his fatal injury is not supported by competent and substantial evidence upon the whole record. Brown v. R. J. Brown Co., 351 Mo. 557, 172 S. W. (2) 645; Phillips v. Air Reduction Sales Co., 337 Mo. 587, 85 S. W. (2) 551; Lewis v. Lowe & Campbell Athletic Goods Co., (Mo.) 247 S. W. (2) 800; Cameron v. Pillsbury, supra.

From the date of Richard's new appointment, March 1, 1948, to and including the last day he worked, April 2, 1948, there were thirty-three calendar days. As indicated, the claimant and her witnesses testified that Richard worked every one of those days including the four Sundays. They testified to actual sales to members of her family on Sundays. Sears contended that there were but twenty-nine working days in the thirty-three day period and its evidence tended to show that he had not worked or made any sales on Sundays. The referee and the Commission found that he worked thirty-three days. In the period he earned and was paid the total sum of $357.61. This becomes important because twenty-nine working days produce an average daily earning of $12.33, which when multiplied by 300 (V.A.M.S. 287.250 (4)) produces a sum in excess of $3600, $3699. A thirty-three day working period produces a daily wage of $10.84, or when multiplied by 300 a sum less than $3600, an annual earning of $3,252. In addition to the thirty-three day period the referee deducted automobile expense of $41.25, leaving a net earning of $316.36 and a daily wage of $9.50. The Commission on review simply found that he worked the thirty-three days and made no allowance for automobile expense. The Commission, in computing the compensation

rate, found that Richard had not been employed by Sears "in the same grade continuously during the year next preceding his injury" and computed his earnings under Section 287.250(4), his earnings, as the Commission found, being not otherwise determinable. That subdivision provides: "As to employees in employments in which it is the custom to operate throughout the working days of the year, the annual earnings, if not otherwise determinable, shall be regarded as three hundred times the average daily earnings in such computation."

Richard had worked as an inside and outside salesman from March 1st to April 2nd which was a different grade than his previous employment and so Sears concedes that his earnings could not be computed under subdivisions (1) and (2) of Section 287.250. Sears contends however that his earnings should have been computed under subdivision (3), "according to the annual earnings which persons of the same class in the same employment and same location (or if that be impracticable, of neighboring employments of the same kind) have earned during such period." It is also urged that if his earnings were properly computed under subdivision (4) that the Commission erred in the manner in which it made the computation under that section.

The difficulty with all the appellant's arguments is that it commands the acceptance of its evidence and the rejection of the respondents' evidence. To substantiate its position that the Commission should have applied subdivision (3) rather than subdivision (4) the appellant argues that it "introduced substantial evidence of the annual earnings of persons in neighboring employments of the same kind" while "Respondents' evidence of the annual earnings of persons in neighboring employments was neither substantial nor competent." It would serve no useful purpose to analyze the evidence and demonstrate its sufficiency one way or another, as the argument indicates the evidence was conflicting. None of the employments were identical in every respect but certainly two, if not three, of the respondents' witnesses were engaged in comparable employments and these testified to a year's previous earnings of $2583 and $2600. Likewise the argument, if subdivision (4) is applicable, that the Commission erred in the manner in which it computed his earnings, compels the acceptance of its evidence that Richard did not work on Sundays and the rejection of the respondents' evidence that he did work on Sundays. As it was with whether he was an employee, conflicting inferences could be drawn, but the Commission's finding under either subdivision is supported by competent and substantial evidence upon the whole record. Werner v. Pioneer Cooperage Co., (Mo. App.) 155 S. W. (2) 319; Hilse v. Cameron, Joyce Const. Co., (Mo. App.) 194 S. W. (2) 760; Mossman v. Chicago & Southern Airlines, 236 Mo. App. 282, 153 S. W. (2) 799; Goetz v. J. D. Carson Co., 357 Mo. 125, 206 S. W. (2) 530. Richard had not worked a full year and we are not therefore concerned with what the result would be had

he worked a full year, and we are not confronted here with a lack of evidence or with evidence which leaves the appropriate inferences to speculation. Metzinger v. H. A. Dailey, Inc., 358 Mo. 689, 216 S. W. (2) 480; Urseth v. Encyclopedia Britannica, 343 Mo. 1083, 124 S. W. (2) 1101.

The finding and award of the Industrial Commission as to both issues is supported by competent and substantial evidence upon the whole record and the judgment is therefore affirmed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.