Richard L. HACKLER, Respondent,

v.

SWISHER MOWER & MACHINE COMPANY and Hartford Accident & Indemnity Company, Appellants.

No. 22301.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1955.

56

Leo T. Schwartz, Kansas City, Charles D. Wilson, Ted V. McGuire, Kansas City, of counsel, for appellant.

Chas. S. Stratton, Clinton, for respondent.

BOUR, Commissioner.

This is an appeal from a judgment of the circuit court affirming a final award of the Industrial Commission in a proceeding under the workmen's compensation law. Claimant-respondent is Richard L. Hackler; the appellants are the Swisher Mower & Machine Company, hereinafter referred to as the Swisher Company, and its insurance carrier, Hartford Accident and Indemnity Company.

The claim for compensation was filed on September 17, 1954, and a hearing was had before a referee on October 18, 1954. The findings of the referee included the following: That on April 22, 1954, claimant was an employee of the Swisher Company and was working under the provisions of the Missouri Workmen's Compensation Law; that on said date, and while claimant was demonstrating a power lawn mower, he sus-

tained an injury by accident arising out of and in the course of his employment, resulting in permanent partial disability of his right great toe—"100 per cent at the distal joint and 50 per cent at the proximal joint"; and that the average weekly wage of claimant was in excess of $52.50. The referee awarded claimant $35 a week for 31 weeks as compensation for permanent partial disability, and $145 for medical aid. Upon review, the full commission affirmed the referee's findings and award. As stated, the final award was affirmed by the circuit court.

Appellants contend that the finding of the commission that claimant was an employee of the Swisher Company, within the meaning of the act, is not supported by competent and substantial evidence. They insist that the undisputed facts show that claimant's status at the time of the accident was that of independent contractor.

The evidence at the hearing before the referee consisted of the testimony of three witnesses; namely, the claimant, his father, L. G. Hackler, and Max B. Swisher, president of the Swisher Company.

The evidence shows that at all times here material the Swisher Company was engaged in manufacturing and selling power lawn mowers and other machines, and had its place of business in Warrensburg, Missouri. The accident occurred in Clinton, Missouri, on April 22, 1954. Claimant was 20 years of age on July 31, 1954. His home was in Clinton, but he was at the time of the accident, and had been for some months prior thereto, a student in the Central Missouri State College at Warrensburg. In the latter part of March, 1954, claimant and his father went to the office of the Swisher Company where they had a conversation with Max B. Swisher. Claimant's father told Mr. Swisher that claimant wanted to earn some money while he was going to school, and that he intended to continue in school during the summer months. This conversation resulted in an oral arrangement between the Swisher Company and claimant. The arrangement was, in part, that claimant would undertake to sell power lawn mowers manufactured by the Swisher Company. Claimant was assigned territory in this state, and the company furnished him with circulars and price lists. He had no authority to sell for less than the prices fixed by the company. Claimant was to furnish his own means of transportation, and pay all of his own expenses. He was paid no salary, and had no drawing account. There was no requirement that he "sell any particular number of machines". He was not required to work on any particular day. He testified: "I worked in the afternoon when I was off from school. I was still going to school at that time and on Saturdays I tried to do some work. Q. Was there any agreement between you and Mr. Swisher as to any specific hours that you would work? A. No, sir. * * *." It was understood that either party could terminate the arrangement at any time.

Under the arrangement claimant was to be paid a commission of 35% on all sales of new power mowers except those involving trade-ins. If he took a trade-in, his commission was to be the difference between 35% of the sale price and the allowance for the power mower taken in trade. The machine taken in trade was to be the claimant's property, and he could sell it for what he could get. Mr. Swisher testified that "as long as (claimant) didn't cut prices on the new machines" he "could take a trade-in in any way he wanted to * * * that was strictly his business, I had to have so much money out of the machine". Claimant gave testimony to the same effect. He further testified: "Q. All the machines that you sold, Richard, were they for cash, you got the full price? A. Yes, sir, I got the full price."

In addition to the new machines, the Swisher Company had some reconditioned power mowers known by the trade name of Mohawk. Under the arrangement, if claimant sold a Mohawk mower he was to pay the company a certain amount and retain all that he received over and above this amount. The evidence shows that claimant sold one Mohawk mower.

When claimant found a prospective buyer he was permitted to use one of the company's power lawn mowers for demonstration purposes. He testified: "Q. Did Mr. Swisher tell you that at no time he wanted you to demonstrate these new mowers by cutting the grass, did he tell you that? A. Yes, sir. * * * Well, I could start the motor and let it run idle, but I could not, I was told not to use it on the grass. 'Q. (By Mr. Stratton) And if you wanted to demonstrate the cutting of the grass, you used a power mower that belonged to your father? A. Yes, sir, that is right." Claimant's father bought a power lawn mower from the Swisher Company. He testified that he "bought the machine and took it for a demonstrator for Dick", his son.

Plaintiff testified that he sold five or six power mowers between the "latter part of March, 1954" and April 22, 1954, the date of the accident, and continued: " * * * in most instances I took the machine, for the customer to see the machine before he purchased it, then he would give me the cash for it and I would leave the machine and the next day after school I would go to see Mr. Swisher and settle up".

The accident occurred while claimant was demonstrating one of the company's reconditioned power mowers for the purpose of making a sale. Claimant testified that he had not attempted to sell power mowers since the accident. He said he was back in school and did not have the time to engage in such work.

So much for the facts. Since the material facts relating to claimant's status are not disputed, the question presented for our determination is one of law. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909, 915. The word "employee" is defined in the workmen's compensation law, Section 287.020 RSMo 1949, V.A.M.S., as "every person in the service of any employer * * * under any contract of hire, express or implied, oral or written, or under any appointment or election"; and the word "employer" has been defined, Sec. 287.030, as "every person * * * corporation * * * using the service of another for pay". In Baldwin v. Gianladis, Mo.App., 159 S.W.2d 706, 708, the court said: "These definitions as well as the whole of the Workmen's Compensation Law should be broadly and liberally construed by the courts in order to effectuate the legislative intent to afford compensation to an employee * * *."

In determining whether a person is an employee within the meaning of the compensation law, the courts have said that the right to control the details of the work is the primary test. The method of payment, the furnishing of equipment, and right to discharge, seem to be important only as they bear on the right to control. Maltz v. Jackoway-Katz Co., supra, 82 S.W. 2d 909, 916. An independent contractor is one who renders service in the course of an independent employment or occupation, following his employer's desires only as to the final result of his work. " * * * the determinative characteristic of the * * * (employer and employee) relation is usually said to be the retention by the employer of the right to direct the manner and details of the work in all its particulars as well as the control of the final result to be accomplished, coupled, necessarily, with the right and power to discharge for proper cause, which is a logical corollary to the right to control. So if one contracts to do a piece of work according to his own methods and without being subject to the control of the other party except as to the final result of the work, he may not be said to be the other's employee, but if such other person reserves the right of control, not only as to the final result of the work, but also as to the mode of doing the work and the means by which the final result is to be accomplished, then the relationship of employer and employee is deemed to be established, regardless of whether such right of control is actually exercised or not". Bernat v. Star-Chronicle Pub. Co., Mo.App., 84 S.W.2d 429, 432. "But every case has been decided on its particular facts, and while the element of control is of the greatest significance in determining the existence of the required relationship,

the fact of control standing alone is not conclusive. Garcia v. Vix Ice Cream Co., Mo.App., 147 S.W.2d 141, 143." Coy v. Sears, Roebuck & Co., 363 Mo. 810, 253 S.W.2d 816, 818.

In the instant case claimant was very much on his own. He furnished his own means of transportation, paid his own expenses, received no salary, had no drawing account, worked when he pleased, found his own customers, and made sales in his own way. He was entirely free to solicit business at any time and at any place within the territory allotted to him. There was no evidence that he was required to make any reports of his activities.

As stated, claimant was to be paid a commission of 35% on all sales of new power mowers unless he took another machine in trade. If he took a trade-in, his commission was to be the difference between 35% of the sale price of the new mower and the allowance for the trade-in. The latter was to be claimant's property. Under the arrangement claimant was to exercise his own judgment with respect to taking a trade-in. Mr. Swisher testified, "that was strictly his business". It seems to us that such an arrangement is inconsistent with an employer-employee relationship. While the plaintiff testified that all of the sales he made were "for cash—the full price", the entire arrangement under which he was working must be considered in determining his status. That part of the arrangement relating to the sale of the Mohawk power mowers is also inconsistent with an employer-employee relationship.

The evidence in this case shows that the Swisher Company did not exercise any control over the claimant's work, beyond restricting his activities to a certain territory, forbidding him to sell for less than the prices fixed by the company, and limiting his use of new power mowers for demonstration purposes. The restrictions as to territory and prices were as consistent with independent contractor status as with employment status. Skidmore v. Haggard, 341 Mo. 837, 110 S.W.2d 726, 731, where the court said: "Restrictions as to territory and as to selling prices are modern business practices even between manufacturers and merchants dealing in various kinds of products." The limitation on the use of new mowers was also consistent with either status. There was no evidence of such control or right of control over the claimant as to give rise to the relationship of employer and employee. The right of the company to terminate the arrangement at will did not of itself make the relationship one of employment. It is our conclusion that there was no substantial competent evidence to support the finding of the commission that claimant was an employee of the Swisher Company, within the meaning of the workmen's compensation law.

It is not necessary to rule on any other question. The judgment rendered by the circuit court should be reversed and the cause remanded with directions to the court to enter a judgment reversing the award of the commission. The commissioner so recommends.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The judgment of the circuit court is reversed and the cause remanded with directions to enter a judgment reversing the award of the commission.

All concur.