Delbert James WIGGER, Claimant-Respondent,

v.

CONSUMERS COOPERATIVE ASSOCIATION, Cockshutt Farm Equipment, Inc., and Employers Mutual Liability Insurance Company, Defendants-Appellants.

Nos. 22518, 22520.

Kansas City Court of Appeals.

Missouri.

Feb. 4, 1957.

Edmund B. Smith, Meyer, Smith, Wetzel & Barry, Kansas City, for appellant, Cockshutt Farm Equipment Inc.

David R. Hardy, Lane D. Bauer, Sebree, Shook, Hardy & Ottman, and Arthur W. Douville, Kansas City, for appellants, Consumers Cooperative Ass'n and Employers Mutual Liability Ins. Co.

N. R. Fischer and Sam Mandell, Kansas City, for respondent.

CAVE, Judge.

This is a claim for workmen's compensation. It was filed against Cockshutt Farm Equipment, Inc., a corporation (hereafter referred to as "Cockshutt"); Consumers Cooperative Association (hereafter referred to as "Consumers"), and its insurer, Employers Mutual Liability Insurance Company.

The cause was first heard before a referee for the Division of Workmen's Compensation. Among other things, he found that the claimant was the employee of Cockshutt alone, and made an award against such employer. Claimant and Cockshutt filed applications for review before the commission, and the commission, on the same evidence, found that both Cockshutt and Consumers were liable to the claimant for compensation, and made an award accordingly for $3,635. The details of that finding will be hereafter noted.

Upon appeal, the circuit court affirmed the award, and Consumers and its insurer, and Cockshutt perfected separate appeals to this court, but the appeals have been consolidated and will be disposed of by one opinion.

The controversy on appeal is primarily between Consumers and Cockshutt. Consumers contends that the court erred in affirming the award of the commission in favor of claimant and against it, because there was no substantial evidence to support such an award. Cockshutt contends that the commission and the trial court were correct in holding that it and Consumers were joint employers of claimant, but erred in not enforcing the provisions of a certain contract between Cockshutt and Consumers which, it is claimed, made Consumers alone responsible for any compensation due claimant.

The amount of the award and other essential facts concerning the injury, etc., are not in dispute and need not be discussed.

There is no material conflict in the evidence relative to the issues presented on appeal. Prior to May 1, 1954, claimant was a regular employee of Consumers and his duties were to repair farm machinery which had been sold by Consumers to customers. He was paid $350 per month, plus expenses. Among other things, Consumers had been engaged in the sale of farm machinery, appliances and parts in a nine-state midwest territory. Its office and principal place of business was located at 1721 Iron Street, North Kansas City, Missouri. It purchased the machines and appliances from Cockshutt, a manufacturing concern, and resold them throughout the territory. In April, 1954, Consumers desired to discontinue its farm implement business, and entered into a contract with Cockshutt, the general purpose of which was to facilitate the disposal and liquidation of the machinery and parts Consumers had in stock, and which had been purchased from Cockshutt. The contract was to become effective on May 1, 1954. It is in great detail concerning the rights and obligations of each party, but the substance of the material part provides that Cockshutt will "(1) to the best of their ability, dispose of the existing stock of farm machinery, * * * presently in Consumers' inventory. Cockshutt will direct the disposal program, the merchandising and servicing of Cockshutt machines as specified in this agreement. (2) * * * Consumers will turn over the direction of the farm machinery program to Cockshutt on the 1st day of May, 1954. (3) Cockshutt will engage personnel to work under the direction of a Cockshutt territory manager. The total personnel to be engaged by Cockshutt will include as a minimum the following: Office Manager, Parts Manager, Service Manager, Record Cerk, Two Parts Men, Two Warehouse Men, Four Block Men, One Secretary. (4) *Consumers will provide, at Consumers' expense, the following competent personnel acceptable to Cockshutt to work under the direction of Cockshutt:* Assistant Parts Manager, Stenographer, Order Department Assistant, Serviceman, Two Block Men. (5) All Cockshutt personnel and the above mentioned Consumers personnel will be under Cockshutt supervision at 1721 Iron Street, North Kansas City. (6) Shipment of all goods from North Kansas City warehouse, 1721 Iron Street, will be the responsibility of Cockshutt personnel. (7) Shipment of Consumers' inventory from all points, except 1721 Iron Street, * * * will be the responsibility of Consumers personnel as directed by Cockshutt. (8) On November 1, 1954, Cockshutt will assume the full personnel responsibility for the farm machinery program, except for the personnel necessary at the warehouses other than 1721 Iron Street * * *. (9) Consumers will not be responsible after November 1, 1954, for providing the personnel referred to in Item (4) * * *. (11) All office and warehouse space at 1721 Iron Street, * * * will be provided by Consumers for Cockshutt's use until November 1, 1955. This will be on a rent free basis, * * *. (15) Consumers and Cockshutt will appraise all machines and attachments now in Consumers' inventory. Consumers will have the final decision as to price, if it cannot be mutually agreed on. * * * (16) A net Consumers' figure on machines and attachments will be established and from this price Cockshutt will be allowed a discount of 17% for Cockshutt's part in

the disposal program. * * * (27) Cockshutt will be allowed 10% from the distributors net price for all Consumers' parts ordered for shipment by Cockshutt. * * *". The contract further provides that if it becomes advisable to ship machines or parts from Cockshutt's factory in order to properly carry out the services to Consumers' dealers, then Consumers' approval must be obtained before any such shipments are made. There are many other details in the contract outlining the procedure for closing out the Consumers' inventory of farm machinery and appliances, but the above provisions are sufficient to indicate the purpose of the plan.

It is conceded that Wigger, the claimant, was one of the employees supplied to Cockshutt under this contract; that he was paid his monthly salary by Consumers from May 1, to about August 1, 1954; that he was injured on June 17, 1954, while repairing a forage harvester at the warehouse, 1721 Iron Street, North Kansas City.

He testified that about May 1, he and other farm machinery employees of Consumers were called into its office and told that Consumers was getting out of the farm machinery business; that Cockshutt was assuming the responsibility of disposing of its farm machinery inventory; and that he, together with six other such employees, should report to Cockshutt. The following day, he, and the other employees, reported to officials of Cockshutt at a meeting held in Kansas City. No officials of Consumers were present at this meeting, but Mr. Maddess and Mr. McLean, representing Cockshutt, gave them instructions relative to their duties under the above contract, to the effect that they would take orders and follow the directions of Cockshutt officials; that he would be doing the same work as before, and would be paid by Consumers; that thereafter, he received his orders and directions and supervision from Cockshutt; that on the day of the accident he was instructed to do certain repair work on a forage harvester which had been sold to

a customer and which was on the property at 1721 Iron Street; and that while making such repairs he received the injuries complained of.

Mr. McLean, who is general sales manager for Cockshutt, testified concerning the meeting with the Consumers employees in Kansas City after the signing of the contract. He stated that "at this meeting we had the members that were under our jurisdiction and on our payroll as of May 1 * * *. We also had the members that were on Consumers' payroll * * * that came under our direction, along with Consumers, if I may put it that way. We explained to them at that time the terms of the agreement, * * * which Cockshutt and Consumers had, and where the authority rested, and pointed out to them that there was no discrimination, that certain members were on Cockshutt's payroll and certain members on Consumers', we all had a job to do in disposing of this equipment. I introduced the man in charge, Mr. Oliver Maddess, and other personnel, such as Mr. Nordine, and outlined to them that they would be in charge of the operation in Kansas City and the personnel would take orders from them." He also testified that Cockshutt had the right to accept or reject any of the members supplied by Consumers and, in fact, did reject one such employee.

Upon this evidence, the referee made this finding: "I find from all the evidence that the employee herein was under the sole control and direction of Cockshutt, * * * it officers and agents, and that Cockshutt * * * was therefore the employer of said employee, * * *"; and made his award accordingly.

On review by the commission, it made the following findings: "We find from all the evidence that the employee, * * * was under the supervision and control of Cockshutt * * *, employer No. 2, and that he sustained an accident on June 17, 1954. We further find that on June 17, 1954, this claimant was performing services for the Consumers * * * in assisting

in the repair and maintenance of farm machinery belonging to said Consumers * *, and that * * * he was performing services for Cockshutt * * * by repairing and maintaining farm machinery that they had contracted to sell and dispose of for the Consumers * * *. We further find that on June 17, 1954, the Consumers * *, employer No. 1, was paying the wages of this claimant and had been paying his wages prior to the date of the accident; that this claimant had been the employee of said Consumers prior to May, 1954; and that * * *, the Consumers * * * assigned this claimant and other employees to Cockshutt * * * in accordance with an agreement executed by both employers in which the employer No. 2 was given the authority to supervise and control said employee. We further find that the Consumers * * * had the sole power to discharge this employee at the time of said accident. * * * that this employee was performing services for the benefit of both employers named above, and that, therefore, he was, and we so find, the joint employee of both employers." Upon such finding, the commission made an award against both Cockshutt and Consumers, which resulted in this appeal.

The findings of the referee and the commission clearly pinpoint the difference in the theory of deciding which was the employer. The referee based his finding on the fact that the employee "was under the sole control and direction of Cockshutt, * * *". The commission also found that the employee "was under the supervision and control of Cockshutt", but made other findings, as set out supra, which resulted in its conclusion that claimant was a "joint employee" of both Cockshutt and Consumers.

■ It is contended by Consumers that since the evidence supports the finding of the referee and the commission that claimant was under the *control and supervision* of Cockshutt, it necessarily follows that Cockshutt alone was the employer and liable

for compensation. The courts have many times held that in determining whether the relationship of master and servant or employer and employee exists, one of the essential or primary elements is the right to control the means and manner of the service as distinguished from controlling the ultimate results of the service. McFarland v. St. Louis Car Co., Mo.App., 262 S.W.2d 344; O'Brien v. Rindskopf, 334 Mo. 1233, 70 S.W.2d 1085; McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S.W.2d 67, 136 A.L.R. 516; Hackler v. Swisher Mower & Machine Co., Mo.App., 284 S.W.2d 55, 58. However, it is equally well established that "every case has been decided on its particular facts, and while the element of control is of the greatest significance in determining the existence of the required relationship, *the fact of control standing alone is not conclusive.*" Coy v. Sears, Roebuck & Co., 363 Mo. 810, 253 S.W.2d 816, 818. See also, Garcia v. Vix Ice Cream Co., Mo.App., 147 S.W.2d 141, 143; and Hackler v. Swisher Mower & Machine Co., supra. Some of the cases cited by Consumers involve the question of "master" and "servant" under common law liability for negligence. Such cases are not directly controlling because it has been said, "The questions of who is an employer and who is an employee, under compensation acts, do not usually depend upon common-law principles (although they may be considered in their construction) but depend instead upon the terms and definitions of such Acts". Loudenslager v. Gorum, 355 Mo. 181, 187, 195 S.W.2d 498, 500. The compensation act is broader than common law principles of master and servant.

It must be conceded that the facts in the instant case are unusual. The general situation presented is that Consumers had been buying and selling farm implements manufactured by Cockshutt; that Consumers had a nine-state territory in which it had established warehouses and agents for the disposal and servicing of such products; that it desired to discontinue this line of merchandise and agreed that Cockshutt

should assume the primary responsibility of doing so, and would have supervision and control of the employees necessary to carry out the program. However, Consumers retained title to all such property and agreed to provide certain of its employees, at its local office and warehouse in North Kansas City, to aid in the disposal and servicing of such machinery; and to retain such employees on its payroll. Consumers also reserved the right to establish the price of the machinery and parts, and other rights and authority in the program of liquidating the inventory. It also assumed the responsibility of shipping and servicing the machinery from all of its warehouses in its territory except that at its office and warehouse in North Kansas City, Missouri. In other words, Consumers did not completely relinquish its authority and control over the program of liquidation of its assets.

It also appears from the contract that Cockshutt was interested in retaining the dealers organization built up by Consumers. Article 12 of the contract provides that "Cockshutt will offer the Cockshutt dealer *francise* to the existing Consumers farm machinery dealers and will enter into a contract, provided such dealers meet Cockshutt dealer requirements".

When all the facts are considered, we are of the opinion that Consumers and Cockshutt entered upon a joint enterprise or program from which both expected to receive benefits; and that they were joint employers of the employees supplied by Consumers. In 58 Am.Jur. Sec. 343, page 813, where the subject of the liability of a general and a special employer is discussed, it is said: "Both the general and the special employer may be held liable for compensation when each shares in the control *or the benefits of the work being done*". (Italics supplied.) In Larson Workmen's Compensation Law, Sec. 48.40, in discussing the same subject, it is said: "There has always been a noticeable reluctance on the part of Anglo-American courts to emulate the wisdom of Solomon and decree that the baby

be divided in half. Courts are showing an increasing tendency, however, to dispose of close lent-employee cases by adopting this sensible compromise, rather than by insisting on an all-or-nothing choice between two employers both bearing a close relation to the employee".

Consumers argues that even though it be held that it was the *general* employer of claimant, nevertheless Cockshutt is solely liable because it had the *control* and *supervision* of the claimant at the time he was injured. In support of this contention, Consumers cites Ellegood v. Brashear Freight Lines, Inc., 236 Mo.App. 971, 162 S.W.2d 628; Joyner v. Kimmell, Mo.App., 217 S.W.2d 724; and Scribner's Case, 231 Mass. 132, 120 N.E. 350, 3 A.L.R. 1178. These and other similar cases are discussing evidence of a typical lent employee. In none of these cases was the employee performing work on property belonging to the general employer, or assisting in carrying out a program from which the general employer would *benefit*. We think the facts in this case set it apart and distinguish it from the usual and ordinary lent employee case. Also, as stated supra, "Control" alone is not conclusive of the question

Some of the cases cited in the briefs were deciding whether the special employer was an independent contractor. That question is not in this case.

Consumers also contends that certain factual findings by the Commission are not supported by the evidence. The first of these is that "claimant, at the time of his injury, was performing service for the Consumers * * * in assisting in the repair and maintenance of farm machinery belonging to Consumers * * *". In support of this contention, Consumers contends that the claimant testified that at the time he was injured he was repairing a machine which had been sold to Chula Farmers Cooperative; that the machine was located on Cockshutt premises and "actually belonged to them". However,

under the contract, and in aid of carrying out this joint enterprise, Consumers had permitted Cockshutt to use certain of its offices and warehouse rent free. Both Consumers and Cockshutt had the use of the offices and warehouse in North Kansas City, and it is undisputed that the farm machinery which Consumers had on hand had been bought and paid for, and belonged to Consumers. The opinion of the claimant that the machine he was working on "actually belonged" to Cockshutt is in direct conflict with the contract between the parties. Certainly the commission could have so found.

The next contention is that there is no evidence to support the finding of the commission that Consumers "had the sole power to discharge" the claimant at the time of the accident. Under the contract, Consumers was to provide some of its employees, which Cockshutt could reject. But since Consumers was paying the claimant's salary, it certainly had the right to discharge him from its employment at any time. The mere fact that Cockshutt had the right to reject the claimant or any other employee of Consumers did not deprive Consumers of the right to discharge such employee, nor give the right to Cockshutt to discharge the employee from Consumers' employment.

 We now consider the contention of Cockshutt that the commission and the trial court erred in not giving effect to the contract between it and Consumers. In the brief it concedes that the commission and the circuit court were correct in finding that Consumers and Cockshutt were the joint employers of claimant, but contends that the commission and the court should have found that the terms of the contract between the parties made Consumers alone liable for the compensation. This contention is based on Item (4) of the contract, supra, which reads: "Consumers will provide, *at Consumers' expense,* the following competent personnel * * *". It is

argued that the clause "at Consumers' expense" would include any compensation due the claimant, as well as his salary and expenses, and should be paid by Consumers. It does not appear from the record that this specific question was, by proper pleading, presented to the commission or to the circuit court, and was not decided by either tribunal. Whether the commission would have jurisdiction to decide such a question is debatable; Harris v. Pine Cleaners, Inc., Mo.Sup., 296 S.W.2d 27; Soars v. Soars-Lovelace, Inc., 346 Mo. 710, 142 S.W.2d 866, 871; but, under the state of the record, we will not pass on any branch of the question.

 Claimant has filed a motion for damages for vexatious appeal as to Cockshutt, under Section 512.160(4) RS1949, V.A.M.S. The basis of the motion is that Cockshutt's appeal is without merit and was taken for the sole purpose of vexatiously delaying payment of the award. The statute does not prescribe the conditions under which such damages may be allowed and the award must rest in the exercise of sound discretion. The appellate courts are reluctant to impose a penalty for vexatious appeal and do so only when it appears from the entire record that the appeal is so devoid of merit as to force the conclusion that it was not taken in good faith. DeMayo v. Lyons, Mo.Sup., 243 S.W.2d 967. No such view will be taken and damages will not be awarded where there are reasonable grounds for the appealing litigant to believe he has a bona fide appeal or where the appeal could reasonably be the result of an honest mistake regarding the application of the law to the facts. Bidleman v. Morrison Motor Freight, Inc., Mo.App., 273 S.W.2d 745, 750. In the instant case, Consumers first perfected its appeal, and two or three days later Cockshutt filed notice of appeal, thus preventing the judgment from becoming final as to it. Furthermore, it has earnestly urged in this court that, under its contract with Consumers the award should

have been against Consumers only. We have decided that question will not be adjudicated on this appeal, but we are unwilling to say that Cockshutt knowingly perfected its appeal in bad faith and for mere vexation and delay. The motion is overruled.

The judgment is affirmed.

BROADDUS, P. J., and FRED H. MAUGHMER, Special Judge, concur.