David E. KNIGHT, Appellant,

v.

CAMERON JOYCE AND COMPANY, a corporation, and Jewell E. Vandiver, d/b/a J. E. Vandiver Construction Company, Appellees.

No. 15827.

United States Court of Appeals Eighth Circuit.

Feb. 12, 1958.

**104**

John B. Ewing, Jr., Kansas City, Mo. (Ralph L. Martin, James E. Lockwood and Brenner, Van Valkenburgh & Wimmell, Kansas City, Mo., were with him on the brief), for appellant.

Roy F. Carter, Kansas City, Mo. (Sprinkle, Knowles & Carter, Kansas City, Mo., were with him on the brief), for appellee Cameron Joyce & Co.,

Don M. Jackson, Kansas City, Mo. (Rogers, Field, Gentry & Jackson, Kansas City, Mo., were with him on the brief), for appellee Jewell E. Vandiver.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment for Cameron Joyce and Company and Jewell E. Vandiver, entered upon directed verdicts in their favor in a personal injury action brought by David E. Knight against them and Edward Arthur Michael, Sr., Edward Arthur Michael, Jr., and Thelma V. Michael. Jurisdiction was based on diversity of citizenship and amount in controversy.

Knight on June 17, 1955, while operating a vehicle known as a "Huber three-wheel flat roller" on United States Highway No. 69 in Clay County, Missouri, was injured when a dump truck owned by Edward A. Michael, Sr., and being driven by his son Edward A. Michael, Jr., collided with the rear end of the roller.

Knight brought this action upon the claim that the accident and his injuries were caused by the negligence of Michael, Jr., the driver of the dump truck, and that the other defendants were liable upon the ground that he was their agent and servant, or, in the alternative, was in the general employ of the defendants Edward A. Michael, Sr., and Thelma V. Michael, and in the special employ of the defendants Vandiver and Cameron Joyce and Company, "and was acting within the scope of his employment at all times for the express purpose of performing a service in the furtherance of an undertaking in which all the said defendants were jointly engaged."

The defendant Vandiver, by answer, denied that Michael, Jr., was his servant, agent or employee, and denied that he (Vandiver) was engaged in any joint undertaking with any of the other defendants.

The defendant Cameron Joyce and Company asserted in its answer that Michael, Jr., was not its or Vandiver's agent, servant or employee, and that Vandiver was an independent contractor under a hauling contract with Cameron Joyce and Company.

At the close of the evidence, the court granted a motion made by Vandiver for

a directed verdict in his favor on the ground that the accident in suit was caused by "acts and omissions of an individual contractor, for whose acts and omissions" Vandiver was not liable. It also granted a similar motion made by the defendant Cameron Joyce and Company. On a motion of the defendants Michael for a directed verdict, the court eliminated Thelma V. Michael from the case. It submitted the case to the jury only as to Michael, Sr., who owned the dump truck involved in the accident, and Michael, Jr., who drove it. The jury returned a verdict for the plaintiff, against them, for $53,800.

The plaintiff contends that, under the evidence and the applicable Missouri law, the questions whether a master-servant relation existed between Vandiver and Michael, Jr., and whether there was such a relationship between Cameron Joyce and Company and Michael, Jr., were questions of fact for the jury, and that the court, therefore, erred in directing verdicts for those defendants.

The evidence showed that Cameron Joyce and Company in 1955 had a contract for the construction of that part of new United States Highway 69 between Liberty and Excelsior Springs, Missouri; that Cameron Joyce had arranged to have its bulk cement, to be used in construction, shipped to Randolph, Missouri; that it had a contract with Vandiver for the transportation of the cement from Randolph to the two batch or mixing plants of Cameron Joyce; that it was necessary to tell Vandiver each day where to take the cement that was being hauled; that Cameron Joyce "had to have this chain of supply of bulk cement to their batch plants from the Randolph Landing," and the employees of Cameron Joyce "oversaw that they had enough cement there at all times"; that Cameron Joyce had an employee to see that the trucks hauling cement from Randolph to the batch plants would be operating at a given time, and to "check these trucks for loss of cement, loose tarpaulins and that sort of thing"; that the cement belonged to Cameron Joyce, and was so treated;

that its employees were in charge of loading the cement on the trucks and also unloading it, and that if the supply of cement got low because the trucks were not hauling, Cameron Joyce would notify Vandiver, and he would take care of it; and that, under his contract, evidenced by a letter of April 4, 1955, from Cameron Joyce, accepted in writing, Vandiver agreed to haul Cameron Joyce's bulk cement "from railroad siding at Randolph, Missouri, to our various plant sites on the work" for seven cents per ton mile.

The evidence also showed that Vandiver was a contractor who owned eight trucks; that during the execution of his hauling contract with Cameron Joyce it became necessary for him to have additional trucks; that he entered into contracts with several truck owners, one of whom was Edward A. Michael, Sr., to haul cement from Randolph to the batch plants of Cameron Joyce for five cents per ton mile; that all of the truck drivers, when they reported for work in the morning, were told by Vandiver's father, who was his foreman at Randolph, where to haul the cement loaded into the trucks by Cameron Joyce; that the load count was kept by an employee of that company at the place of delivery; that the load count, which constituted the basis of payment for the hauling by Vandiver and by the truckers, including Michael, Sr., who had contracted with Vandiver to haul cement for five cents a ton mile, was obtained from Cameron Joyce at the end of the day or week; that when rainstorms interfered with the hauling operation, Vandiver, in order to protect the cement on loaded trucks, instructed all drivers to park their trucks in garage space which he had borrowed at Liberty, Missouri; that he paid the operators of trucks not owned by him five cents a ton mile for hauling the cement; that they were doing the same work that his own trucks were doing; that he could have dispensed with the trucks not owned by him at any time, whether he needed them or not; that under Vandiver's arrangement with Michael, Sr., for hauling at five cents a ton mile, Michael, Sr., paid

for the gas, oil, repairs and other expenses connected with his trucks; that he designated who would drive his trucks; that it made no difference to Vandiver who drove a truck as long as the driver had a union card; that Michael, Sr., could substitute drivers; that he or his drivers could pick the shortest route to be used from Randolph to the mixing plants and return; that if Michael, Sr., "wanted to leave early on a day at the end of any load, he could do so"; that Vandiver did not pay any social security taxes for Michael, Sr., or for his son, and did not deduct any "withholding tax on" Michael, Sr., or his drivers; that the Michaels were not on the Vandiver payroll; that Michael, Sr., had to pay the license on his trucks; that there was no agreement that he was to haul any given number of loads a day; that when a truck was parked under cover because of bad weather, Michael and the other hauling contractors "did not get any money"; that Michael and his son were not paid for time they were not driving a truck; that when Vandiver's own trucks were not operating he did not pay the drivers; and that he paid his own employees for operating his trucks by the hour, and paid social security taxes on those drivers.

The evidence of Edward A. Michael, Sr., showed that his occupation was that of a truck owner and operator; that on or about June 17, 1955, he and his son were both trucking cement from Randolph to the Cameron Joyce batch plants; that they reported for work each day to Vandiver senior, who told them where to take the cement; that they took their turn with the rest of Vandiver's trucks; that Cameron Joyce had an employee who watched "the line" and told Michael and his son and the other drivers when their tarpaulins were loose, and instructed them to tighten them up, and, if they were losing cement, would tell them what to do to prevent the loss; that the instructions the Michaels received about the hauling came from Vandiver senior; that if Michael, Sr., was not going to be at the job in the morning or if he was

going to leave early or if his trucks broke down, he would report to Vandiver senior; that Michael, Jr., could have quit work at any time without Vandiver's permission, but not without Michael Sr.'s permission; that Michael, Sr., looked to Vandiver for instructions as to where to load and where to deliver the cement; that Michael, Sr., "did so because he did not know to which plant he would have to go on a given day"; that those were all the instructions necessary for Vandiver to give; that as to anything else that Michael, Jr., would have to do, Michael, Sr., would not look to Vandiver for orders.

Edward A. Michael, Jr., testified that when he reported to work it was to Vandiver senior; that he told Michael, Jr., where to take the load and what route to follow; that he could have taken any route; that he did not look for a shorter route; that he received his pay from his father; that no one set their hours of work; that on one occasion he obtained permission from Vandiver to take home the loaded truck he was driving, because the load was valuable and he did not want anyone to think he was stealing it.

All that we can deduce from the evidence is that Cameron Joyce had the contract for the construction of the highway; that in the performance of its contract its cement had to be hauled from Randolph to its batch plants; that, instead of hauling the cement itself, it contracted with Vandiver to haul it at seven cents a ton mile; that Vandiver did not have enough trucks of his own to do all the hauling, and contracted with Michael, Sr., and other truck owners and operators to do part of the hauling, for which they were to receive from Vandiver five cents per ton mile; that virtually the only instructions given by Cameron Joyce to the truckers were to keep the tarpaulins tight and to stop leaks so as to prevent loss of cement; and that the only instructions given by Vandiver to the independent truckers were where to take their loads and, in case of rain, to put their loaded trucks under cover to

prevent the cement from being damaged or ruined.

The plaintiff contends that, under Missouri law, the evidence, viewed in the aspect most favorable to him, made the issues whether Michael, Jr., was in the employ of Cameron Joyce, or of Vandiver, or of both, issues of fact for the jury, and that the court therefore erred in directing a verdict in their favor. These defendants take the position, as they did at the trial, that the evidence conclusively established that Michael, Jr., was solely in the employ of his father, who was an independent contractor hauling cement for five cents a ton mile.

■ The conclusion of the trial court that, under Missouri law, the evidence was insufficient to take the case to the jury as against Cameron Joyce and Vandiver will not be overruled by this Court unless it can be demonstrated that the conclusion was induced by a clear misconception or misapplication of the local law. Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733–734, 735.

The plaintiff cites the case of Roman v. Hendricks, 80 S.W.2d 907, in which the St. Louis Court of Appeals held that the issue whether a person who hired a truck and driver from the truck driver's general employer was liable for the negligent operation of the truck by the driver, was an issue of fact for the jury. In that case there was evidence that the person hiring the truck and driver took full charge of the driver and assumed full control over him. The case is readily distinguishable.

The plaintiff also cites Simmons v. Murray, 209 Mo.App. 248, 234 S.W. 1009, a decision of the Kansas City Court of Appeals, in which it was held that a company hiring a truck to carry employees to and from work was liable for the negligent act of the driver in backing the truck while loading, if it had the right to control the driver at such time, whether it chose to exercise that control or not, though the exercise of control should be considered in determining whether the right to control existed.

We think that, under the evidence in the instant case, a finding that, at the time of the accident in suit, Vandiver had, or was exercising, such control over Michael, Jr., the driver of his father's truck, as would make him (Vandiver) liable for damages to the plaintiff, could not be sustained, and certainly no such finding as to Cameron Joyce would be warranted.

■ It is the rule in Missouri, as it is elsewhere, that in determining whether the relationship of master and servant exists, one of the essential elements is the right to control the manner and means of the service being performed, as distinguished from controlling the ultimate results of the service, and that each case is conditioned by its own peculiar facts. See Wigger v. Consumers Cooperative Association, Mo.App., 301 S.W.2d 56, 60.

We think the following Missouri cases lend support to the conclusion reached by the trial court: Skidmore v. Haggard, 341 Mo. 837, 110 S.W.2d 726; State ex rel. Chapman v. Shain, 347 Mo. 308, 147 S.W.2d 457.

■ It is our opinion that the District Court, in determining that the evidence failed to show that Michael, Jr., bore any such relation to Cameron Joyce and Company or to Vandiver as would, under Missouri law, make either of them liable for the actionable negligence of Michael, Jr., which caused the plaintiff's injuries, reached a permissible conclusion.

The judgment in favor of the appellees, from which this appeal is taken, is affirmed.