**Clyde GRIFFIN, Appellant,**

v.

**SINKS FORD SALES and Fidelity and Casualty Company of New York, Respondents.**

No. 8592.

Springfield Court of Appeals.

Missouri.

March 22, 1967.

James C. Bullard, Dalton, Treasure & Bullard, Kennett, for appellant.

William H. Billings, McHaney, Billings & Welman, Kennett, for respondents.

HOGAN, Judge.

This appeal is taken from an order of the Circuit Court of Dunklin County affirming an award denying compensation to the appellant, Clyde Griffin, under the provisions of the Workmen's Compensation Law Chapter 287, RSMo (1959), V.A.M.S. The appellant's claim for compensation is based on his assertion that he was injured in an automobile accident while on his way to contact a prospective customer for the employer. The employer and insurer have resisted the claim on the ground that Mr. Griffin was not an employee within the meaning of Section 287.020, par. 1, RSMo (1959). In making its award, which

is what we review here, Michler v. Krey Packing Co., 363 Mo. 707, 716, 253 S.W.2d 136, 140, the Industrial Commission found that the claimant had not sustained his burden of showing that he was an employee within the meaning of the statute. What we are to decide is whether the Commission could reasonably have made its findings and reached its result upon consideration of all the evidence before it, and whether its decision is clearly contrary to the overwhelming weight of the evidence. Article V, Section 22, Constitution of 1945, V.A.M.S.; Monical v. Armour & Company, Mo., 307 S.W.2d 389, 391 [1]; Michler v Krey Packing Co., supra, 363 Mo. at 717, 253 S.W.2d at 141 [6].

The record discloses that Clyde Griffin, the claimant, was a former automobile salesman who left Dunklin County in July 1958 to work in Flint, Michigan. He remained there until December 1959, when he returned to Arbyrd, a small town in Dunklin County. In January 1960, Mr. Griffin purchased a cafe at Arbyrd, called the Dunklin County Cafe. He ran the cafe alone for two or three months and then "hired a lady to take care of the place for me." Late in March 1960, the claimant had a conversation with a Mr. Jack Meredith (whose status with the employer is disputed) in the course of which Meredith told the claimant "he [Meredith] wanted me to go to work for him and take a demonstrator." Mr. Griffin was given price lists and descriptive literature by employees of Sinks Ford Sales, and at the same time he obtained an automobile for use in his work. Whether the claimant bought this automobile, or whether it was furnished by the employer as a demonstrator, was one of the principal controverted issues at the hearings on this case.

Mr. Griffin testified that his territory was to be the south part of Dunklin County, including Cardwell, Senath, Arbyrd and Hollywood. He was required, he said, to be at the employer's garage at Kennett one day a week, on Saturday, but was not assigned a quota for sale and "wasn't required to work no certain amount of hours." During the time he worked—a little less than a month—Mr. Griffin continued to live at Arbyrd and continued to operate his cafe there.

The claimant received no salary and had no drawing account at Sinks Ford Sales; he was to be paid a commission of five per cent on each sale, up to a maximum of $50.00. During the course of the hearings on this matter, Mr. Griffin stated that he "was to take my customers in to Sinks Ford Sales for their trade-in to be appraised," but also said he had no authority to make a completed deal. In a pre-trial deposition given in December 1960, the claimant described his method of operation by saying that he would "just go out and see people, any prospect and anybody that I had in mind I thought maybe I might could sell a car to * * *" and then would "* * * talk up the deal and if they was interested in trading and I could get them to come in why Jack Meredith was supposed to appraise their trade-in if we could get them together on a deal." In this deposition, Mr. Griffin added, "No, I didn't have authority to make a deal myself. Even if I did make a deal they had authority to turn down the deal here if they wanted to." The claimant was supposed to report his contacts, which he made mostly by telephone, but he was not required to make any written reports. During the short time he worked, Mr. Griffin paid his own expenses in connection with the automobile he used, though the employer washed the vehicle once a week without charge. On April 21, 1960, while on his way to contact a prospective purchaser, the claimant was involved in an automobile accident and was seriously injured.

Both parties recognize that the determination of this case, reduced to essentials, depends on whether Mr. Griffin was an "employee" within the intent and meaning of the statute when he was injured. The appellant argues that because Sinks Ford Sales furnished instrumentalities with

which to do the work, and exercised control over the claimant by requiring him to be in Kennett one day a week, by assigning him a specific territory, and by requiring Mr. Meredith's approval before a transaction was completed, the necessary relationship is established. The employer and insurer deny that Mr. Meredith had any authority to hire the claimant in the first place, and argue that in any event the only elements of control established were the reservations with respect to the territory in which Mr. Griffin could operate and the price at which he could sell, and consequently the claimant must be classified as an independent contractor.

■■ There can be no disagreement as to the general principles involved. Although common law concepts are nòt finally controlling, and the terms "employer" an "employee" are broader and more inclusive than the terms "master" and "servant," still it is generally true that the relationship of master and servant must exist for the accident to be compensable. Coy v. Sears, Roebuck & Co., 363 Mo. 810, 815–817, 253 S.W.2d 816, 818–819 [1]; McFarland v. St. Louis Car Co., Mo.App., 262 S.W.2d 344, 348 [5, 6]; McQuerrey v. Smith St. John Mfg. Co., 240 Mo.App. 720, 725, 216 S.W.2d 534, 537 [3–5]. The principal evidentiary circumstances to be considered in determining whether this relationship exists have been fully set out and discussed many times, and we need not repeat them here. See Mattan v. Hoover Co., 350 Mo. 506, 516–517, 166 S.W.2d 557, 564–565 [3–5], [6]; Skidmore v. Haggard, 341 Mo. 837, 844–845, 110 S.W.2d 726, 729–730 [3–5]; Restatement (Second) of Agency, Section 220 (1958). However, it must be borne in mind that in determining whether a particular person is a servant or an independent contractor, no one of the various factors to be considered is in itself controlling; each case must be decided upon its peculiar facts, Coy v. Sears, Roebuck & Co., supra, 363 Mo. at 816, 253 S.W.2d at 818; McKay v. Delico Meat Products

Co., 351 Mo. 876, 887–888, 174 S.W.2d 149, 156–157 [8], and the relationship which actually exists will usually have some characteristics of the other. Horn v. Asphalt Products Corp., Mo.App., 131 S.W.2d 871, 872. If the cases are considered topically, there seems to have been a tendency to classify unsupervised salesmen of insurance, automobiles and the like as independent contractors, unless they are on salary or perform some fixed services. 1A Larson, Workmen's Compensation Law, Section 45.23, pp. 664–665 (1966). At the same time the precedents are not uniform, and there is no fixed rule of law which will serve to determine all cases of this type. Celaya v. Edwards, 71 Ariz. 178, 225 P.2d 41, 42 [1].

■ The claimant's evidence, taken as true, did tend to show some of the indicia of the relationship of master and servant. His testimony was that he had been furnished with an automobile, sales literature and price lists for use in his work, and the ownership of the instrumentalities used in the work may indicate that the owner is a master, especially if the instrumentalities are of substantial value. 1A Larson, Workmen's Compensation, Section 44.34, pp. 650–653; Restatement (Second) of Agency, Section 220, Comment k, and Illustration 6, pp. 490–491. However, there was substantial evidence from which the Industrial Commission could have found that Mr. Griffin mortgaged and insured the car as his own, and that he applied for a title in his own name. It is true that Mr. Griffin went on to testify that he was under the impression that the mortgage was a "demonstrator contract" when he signed it, and that he was only supposed to continue making payments until the automobile was sold at retail, but the Commission was the judge of the weight to be given conflicting testimony, and if conflicting inferences were permissible, the Commission had a choice. Shrock v. Wolfe Auto Sales, Mo., 358 S.W.2d 812, 815; Conley v. Meyers, Mo., 304 S.W.2d 9, 12. Likewise, the claimant's testimony

that he was *required* to be present at the Sinks garage every Saturday tends to establish fixed hours of employment, and to that extent indicates the relationship of master and servant, as does assignment to a specific territory. Restatement (Second) of Agency, Section 220, Comment h, p. 489. However, the claimant's evidence of the fact of his employment by Sinks was flatly contradicted by Mrs. Sinks, who testified that she, and not Meredith, was in charge of hiring and firing at Sinks Ford Sales, and that she neither employed Mr. Griffin as a salesman nor at any time authorized his employment. The force of claimant's testimony concerning his arrangements with Mr. Meredith was undoubtedly weakened by the fact that Mr. Meredith, having been called as a witness and having been sworn, was allowed to step down without interrogation by the claimant, who called him. As with the ownership of the automobile, the Commission was presented with conflicting evidence, and it was for the Commission to judge the credibility and weight of the evidence and resolve the conflict.

 On the other side of the scale, so to speak, and in our view determinative of the case, is the claimant's own description of his method of operation and the characteristics of his job. Mr. Griffin's statements in his pre-trial deposition, parts of which were offered and received in evidence without objection, were to the effect that he was to "just go out and see people, any prospect and anybody that I had in mind I thought maybe I might could sell a car to or somebody tipped me off to * * *." The claimant would then "talk up the deal and if they was interested in trading and I could get them to come in why Jack Meredith was supposed to appraise their trade-in if we could get together on a deal." Mr. Griffin paid his own expenses in connection with his automobile; he continued to operate his cafe;

he received a commission, but no salary; and he had no regular hours of employment in the sense that he "wasn't required to work no certain amount of hours." Mr. Griffin had no authority to make a sale, but was authorized only to bring about contractual relations between Sinks Ford Sales and others on his own initiative and by his own methods, or so the Commission could have found. Cf. Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 638, 117 S.W. 2d 252, 256 [6], 116 A.L.R. 1381, 1387. In cases which we consider analogous and persuasive if not absolutely controlling, it has been said that a salesman who works entirely on a commission basis, the employer reserving only general control over him, as for example with respect to the territory and the price at which he may sell, the salesman being otherwise in control of the methods and means of doing his work, will, as a general rule, be held to be an independent contractor. Kickham v. Carter, Mo., 335 S.W.2d 83, 87; Barnes v. Real Silk Hosiery Mills, 341 Mo. 563, 569–570, 108 S.W.2d 58, 62 [5]; Hackler v. Swisher Mower & Machine Co., Mo. App., 284 S.W.2d 55, 59. See also Restatement (Second) of Agency, Section 220, Illustration 7, p. 491. We are only called upon to determine whether the Industrial Commission could reasonably have made the findings and award under consideration, and whether such findings and award are clearly contrary to the overwhelming weight of the evidence, not whether a contrary conclusion might be permissible. Conley v. Meyers, supra, Mo., 304 S.W.2d at 10 [2]; Johnson v. Simpson Oil Co., Mo.App., 394 S.W.2d 91, 97–98 [12]. Since we conclude the Commission could reasonably have found that the claimant was an independent contractor and not an employee, the judgment is affirmed.

STONE, P. J., and TITUS, J., concur.